**EASTERN OF MAINE, INC.**

v.

**VINTNERS GROUP LTD.**

Supreme Judicial Court of Maine.
Argued April 30, 1985.
Decided July 5, 1985.

Brann & Isaacson, George S. Isaacson, (orally) Martin I. Eisenstein, Lewiston, for plaintiff.

Preti, Flaherty & Beliveau, Estelle A. Lavoie (orally) Jonathan Piper, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Eastern of Maine, Inc., (Eastern) appeals from a judgment of the Superior Court, Androscoggin County, finding that the termination of its franchise agreement by Vintners Group Ltd. (Vintners) was supported by good cause, as required by 28 M.R.S.A. § 667 (Supp.1984), that 28 M.R. S.A. § 669 (Supp.1984) did not afford Eastern a right to compensatory relief based on Vintners' bare failure to give notice of termination, and that Eastern had not met its burden of proving damages sought pursu-

ant to 28 M.R.S.A. § 672 (Supp.1984). We affirm the judgment.

### I.

The facts of this case are set out in greater detail in *Eastern of Maine, Inc. v. Vintners Group Ltd.*, 455 A.2d 936 (Me. 1983) (*Vintners I*). Stated briefly, the facts are as follows. Vintners is a supplier of wines in New England, having its warehouse in Danvers, Massachusetts. Vintners is the certificate of approval holder with the right to sell Sebastiani wine products in Maine. During the period of time relevant to this action, Eastern was a wholesaler of wines with its principal place of business in Lewiston. In 1976, by oral agreement with Vintners, Eastern acquired the exclusive wholesale distributorship of Sebastiani wines in an area encompassing much of the state of Maine.

With Vintners' knowledge and participation, Eastern attempted to negotiate the sale of its distributorship to a single wholesaler in late 1979 and early 1980, but no transfer resulted at that time. Between July and December 1980, Eastern divided its Sebastiani distribution area into three sections and sold each section to a different wholesale distributor without previously consulting Vintners.

In August 1980, Eastern wrote a letter to the Maine Bureau of Alcoholic Beverages, informing the agency of the first sale, which had occurred in July. Eastern sent a copy of the letter to Vintners, thus giving Vintners its initial notice of the sale. Vintners responded by letter dated September 18, 1980, notifying Eastern of its opposition to the transfer and requesting Eastern's resignation from its Maine distributorship. On September 23, the day after contracting for the second sale, Eastern met with Vintners, but the parties were unable to resolve their differences. In a letter dated September 25, Vintners terminated Eastern's distributorship and conveyed its intention to appoint another distributor to cover its Maine territory.

On September 26, Eastern wrote a letter notifying Vintners of its transfer of the second portion of the distribution territory. Eastern requested Vintners' consent to the transfer, which Vintners refused to give. Eastern assigned the remaining section of its territory to the third buyer on November 14. Later in the fall, Vintners stopped supplying Eastern with Sebastiani products and appointed Pine State Beverage (Pine State) as the new distributor covering Eastern's former territory.

In December 1980, Eastern filed suit against Vintners and Pine State in Superior Court, seeking preliminary and permanent injunctions, compensatory and punitive damages, and litigation costs. After a jury-waived trial, the court entered judgment for Vintners.

Eastern appealed from the judgment. On appeal, we affirmed the judgment in part, holding that vintners had reasonably refused to consent to the assignments and that the transfers therefore had no legal effect. *Vintners I*, 455 A.2d at 943, 945. Because the record did not disclose the terms of the distribution agreement between Vintners and Eastern, we vacated the Superior Court's finding that Eastern had violated the agreement and remanded the case for the trial court's determination whether Vintners had good cause to terminate the agreement. *Id.* at 944. Finally, we held that Eastern's "breach" would not necessarily relieve Vintners from complying with the notice requirements of 28 M.R.S.A. § 669. *Id.*

By agreement of the parties, the matter was resubmitted to the trial court on the original record. On remand, the Superior Court held that Eastern's unilateral implementation of the transfers without Vintners' consent gave Vintners good cause to terminate the distribution agreement. The court found Vintners thereby relieved of liability under 28 M.R.S.A. § 671,[1] and held

---

1. Section 671 provides in pertinent part:
   **§ 671. Compensation**

   **1. Reasonable compensation.** Any certificate of approval holder which amends, can-

cels, terminates or refuses to continue or renew any agreement, or causes a wholesaler to resign, unless for good cause shown, as defined in section 668, from an agreement or unreasonably withholds consent to any as-

that the statute imparts no right to compensatory damages for the mere failure to give notice of termination. Finally, the court rejected Eastern's claim of damages under section 672, finding insufficient evidence that Vintners had terminated Eastern's distribution rights in bad faith.

## II.

■ Eastern contends the Superior Court erred in finding on remand that Vintners had good cause to terminate the distribution agreement as required by 28 M.R.S.A. § 668.[2] The parties agree that Eastern's acts do not fall within the ambit of subsections (A) through (C) of section 668. Eastern contends that subsection (D) also does not apply because there is no evidence in the record that pretransfer approval of any sale of distribution rights by Eastern was a "reasonable and material requirement imposed" by Vintners on the wholesaler. Recognizing that section 668 expressly provides that the subsections are not exclusive illustrations of factual situations constituting good cause to terminate a distributorship agreement, Eastern notes that the circumstances in subsections (A) through (C) all pertain to the unfitness or inability of a wholesaler through economic failure or wrongdoing to distribute the certificate holder's products effectively. East-

ern argues that the failure to get prior consent to an assignment is not of a sufficiently similar nature to those examples to come within section 668.

We disagree. The statute charges a certificate of approval holder with filing in the Bureau of Alcoholic Beverages a list identifying the wholesalers authorized to distribute the certificate holder's products and their respective exclusive territories. 28 M.R.S.A. § 667 (Supp.1984). The State thereby retains control of the sale of beer and wine in Maine through the certificate holders, who retain control of the distributors of their products. If a distributor were permitted to assign its sales territory without allowing the certificate of approval holder an opportunity to consider the suitability of the buyer, this sequence of responsibility would be seriously impaired.

Furthermore, while recognizing that the purpose of the Act is to address "the unequal bargaining power of the certificate of approval holder as compared to the wholesale licensee,"[3] we stated in *Vintners I:*

> The Legislature did not intend and the Act does not contemplate addressing the imbalance by tipping the scales in favor of the wholesaler. The express legislative goal of promoting "fair business relations" between certificate holders and

signment, transfer or sale of a wholesaler's business, shall pay the wholesaler reasonable compensation for the value of the wholesaler's business with relationship to the terminated brand or brands. The value of the wholesaler's business shall include inventory and other tangible assets and its good will, if any. 28 M.R.S.A. § 671(1) (Supp.1984).

2. The section of the Certificate of Approval Holder and Maine Wholesale Licensee Agreement Act (Act) governing cancellation of distribution agreements provides:

1. **Good cause.** Notwithstanding the terms, provisions or conditions of any agreement, no certificate of approval holder shall amend, cancel, terminate or refuse to continue or renew any agreement, or cause a wholesaler to resign from an agreement, unless good cause can be established or proven for amendment, termination, cancellation, nonrenewal, noncontinuation or causing a resignation. "Good cause" shall not include the sale

or purchase of a certificate of approval holder. "Good cause" shall include, but not be limited to, the following:

A. Revocation of the wholesaler's license to do business in the State;

B. Bankruptcy or insolvency of the wholesaler;

C. Assignment for the benefit of creditors or similar disposition of the assets of the wholesaler; and

D. Failure by the wholesaler to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed upon him by the certificate of approval holder.

28 M.R.S.A. § 668 (Supp.1984).

3. L.D. 776, Statement of Fact (109th Legis.1979).

wholesalers will be achieved by eliminating capricious and arbitrary action by the certificate holder against the wholesaler, not by sacrificing sound economic and business judgment, on which the certificate holder's business and any "business relations" depend.

455 A.2d at 942–43.

The Superior Court found Vintners had good cause to terminate the distributorship agreement based on Eastern's first assignment without Vintners' consent, splitting the sales territory and permitting the unapproved assignee to commence distribution of Vintners' products. Reviewing the court's finding by the clearly erroneous standard, we determine there is competent evidence in the record to support it. *See Harmon v. Emerson*, 425 A.2d 978, 981–82 (Me.1981); M.R.Civ.P. 52(a).

Even if Vintners had good cause to terminate the distribution agreement, Eastern posits, Vintners was still required, and failed, to give Eastern a reasonable time to correct its transgression as well as 90 days prior written notice of Vintners' intent to terminate the agreement.[4] Section 669 provides:

> **1. Written notice.** Prior to any termination procedure initiated by the certificate of approval holder, a wholesaler shall be informed in writing of any claimed deficiency existing in his territory and shall be given reasonable time to correct the claimed deficiency or deficiencies. After this reasonable time has elapsed, a certificate of approval holder shall provide a wholesaler at least 90 days prior written notice of any intent to amend, terminate, cancel or not renew any agreement. The notice shall state all the reasons for the intended amendment, termination, cancellation or nonrenewal. The notice provisions of this section shall not apply if the reason for the amendment, termination, cancellation or renewal is:

> **A.** The bankruptcy or insolvency of the wholesaler;

> **B.** An assignment for the benefit of creditors or similar disposition of the assets of the business;

> **C.** Revocation of the wholesaler's license; or

> **D.** Conviction or a plea of guilty or no contest to a charge of violating a law relating to the business that materially affects the wholesaler's ability to remain in business.

28 M.R.S.A. § 669 (Supp.1984).

Eastern professes that had Vintners given it a reasonable time to correct the claimed deficiency, Eastern could either have found another distributor acceptable to Vintners or itself continued distributing Sebastiani products, thereby obviating Vintners' good cause to terminate. We find this contention without merit. In our view, Vintners' letter of September 12 provided adequate notice of deficiency, both requesting Eastern not to make the first transfer and stating three grounds for its opposition. Moreover, by entering into the second and third sale agreements after receiving Vintners' notice of deficiency, Eastern demonstrated its lack of intention to cure the deficiency.

### III.

In *Vintners I*, we noted that even if a finding of good cause on remand precluded Eastern from recovering under section 671, recovery might still be available under the provisions of section 672. 455 A.2d at 945. The section provides:

> If a certificate of approval holder engages in conduct prohibited under this chapter a wholesaler may maintain a suit against the certificate of approval holder. The court may grant equitable relief as is necessary to remedy the effects of conduct which it finds to exist and which is prohibited under this chapter, includ-

---

4. There is no question that, by issuing a letter of immediate termination without giving 90 days notice, Vintners failed to comply with the second notice requirement of section 669. *See Vintners I*, 455 A.2d at 943.

ing, but not limited to, declaratory judgment and injunctive relief. The court may, if it finds that the certificate of approval holder has acted in bad faith in invoking the amendment, termination, cancellation or nonrenewal provisions of this chapter or has unreasonably withheld its consent to any assignment, transfer or sale of the wholesaler's agreement, award punitive damages, as well as actual damages, costs and attorneys fees.

28 M.R.S.A. § 672 (Supp.1984).

■ The Superior Court found on remand that despite Vintners' failure to give proper notice of termination, Vintners did not terminate Eastern's distribution rights in bad faith. Eastern alleges the court overlooked further evidence of bad faith. We will not overturn the findings of the trial court simply because the evidence lends support to an alternative finding. *See Harmon v. Emerson*, 425 A.2d at 982. Reviewing for clear error, we find competent evidence to support the Superior Court's finding. *Id.*

Vintners plainly terminated the agreement for the valid business purpose of maintaining a single sales territory for its Sebastiani products in Maine. *See Vintners I*, 455 A.2d at 942 (opposition to splitting territory not based on "preformed favoritism" toward Pine State). We agree that Vintners' knowing violation of the notice provisions might be evidence of bad faith. On the basis of this record, however, we conclude that the Superior Court did not clearly err in finding that Vintners did not terminate the agreement in bad faith.

■ Finally, Eastern asserts that even if this court affirms the finding of no bad faith in Vintners' termination of the franchise agreement, Eastern is still entitled to relief under section 672. Specifically, Eastern maintains it is entitled to restitution of the unjust enrichment enjoyed by Vintners through its wrongful appropriation of Eastern's proprietary interest in the Sebastiani distributorship. Eastern relies on the following language in section 672:

If a certificate of approval holder engages in conduct prohibited under this chapter a wholesaler may maintain a suit against the certificate of approval holder. The court may grant equitable relief as is necessary to remedy the effects of conduct which it finds to exist and which is prohibited under this chapter, including, but not limited to, declaratory judgment and injunctive relief.

28 M.R.S.A. § 672.

We agree with the Superior Court that Eastern has failed to demonstrate its right to recovery under this or any theory. Eastern has not proven it suffered any harm by Vintners' failure to give 90 days notice of termination. Indeed, Eastern forged ahead single-mindedly with its plan to sell the Sebastiani distribution rights to three buyers in the face of Vintners' express disapproval of dividing the sales territory. There is no error in the Superior Court's finding that Eastern was not entitled to equitable relief.

The entry is:

Judgment affirmed.

All concurring.