CAMPAIGN FOR SENSIBLE
TRANSPORTATION,

v.

MAINE TURNPIKE AUTHORITY.

Supreme Judicial Court of Maine.

Argued Jan. 6, 1995.
Decided May 8, 1995.

Robert Edmond Mittel (orally), Mittel, Asen, Eggert, Hunter & Cary, Portland, for plaintiff.

Elizabeth A. Olivier (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

CLIFFORD, Justice.

The plaintiff, Campaign for Sensible Transportation (CST), appeals from a summary judgment entered in the Superior Court (Cumberland County, Brodrick, J.) in favor of the Maine Turnpike Authority (MTA). CST contends, *inter alia,* that its claim for injunctive relief is not moot, and that the MTA is not the equivalent of the State for the purpose of its entitlement to attorney fees pursuant to its section 1983 claims. We affirm the judgment.

CST is a nonprofit political action committee formed to support the passage of a November 1991 referendum that was initiated to prevent the widening of the Maine Turnpike and to change the State's transportation policy. CST initiated a lawsuit in July 1991 against the MTA, individual members of the MTA, including its Executive Director and the Commissioner of Transportation, in their individual and official capacities, and the Coalition for Responsible Government, a non-profit political action committee formed for the purpose of defeating the anti-widening referendum. CST's complaint alleged that highway toll revenues had been and were being spent to help defeat the referendum. In particular, CST alleged that improper expenditures were made between September 1990 and July 1991, and sought to recover these monies, as well as enjoin any additional expenditures of turnpike funds.

In August 1991, CST filed a motion for a preliminary injunction. All of the defendants moved to dismiss and for a summary judgment. The Superior Court (*Alexander, J.*) denied CST's motion for a preliminary injunction because most of the activities alleged to be improper had been terminated. The court also denied MTA's motions, and granted the Coalition for Responsible Government's motion for a summary judgment and dismissed it as a party to the action.

In September 1993, by joint motion to dismiss pursuant to M.R.Civ.P. 41(a)(2), the Superior Court (*Brodrick, J.*) ordered "all individually-named defendants" dismissed from liability on counts I through IV, and dismissed CST's fifth claim as well.[1]

In March 1994, the Superior Court (*Brodrick, J.*) granted MTA's motion for a summary judgment. The court's decision states:

> Because there is no evidence that the alleged wrongful conduct by the Maine Turnpike Authority (MTA) will be repeated and because the MTA, as a state agency, cannot be sued for attorneys fees under a Section 1983 civil rights action, the MTA is granted summary judgment on the remaining claims against it.

CST's appeal followed.

■ We review a grant of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered. *Kelly v. University of Me.,* 623 A.2d 169, 171 (Me.1993). "[W]hen there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law," we will affirm the judgment. *Smith v. School*

---

1. The fifth claim provides in part that "[t]he Board members' actions in approving these expenditures were ultra vires and they are liable, in their individual capacities, to restore to the Authority the funds unlawfully paid."

*Admin. Dist. No. 58,* 582 A.2d 247, 248 (Me. 1990).

## I.

■ A long standing requirement for review by this Court is that the case present us with a justiciable controversy. "A justiciable controversy is a claim of present and fixed rights, as opposed to hypothetical or future rights, asserted by one party against another who has an interest in contesting the claim. Accordingly, rights must be declared upon the existing state of facts and not upon a state of facts that may or may not arise in the future." *Connors v. International Harvester Credit Corp.,* 447 A.2d 822, 824 (Me. 1982). If the issues between the parties have become moot, the appeal is nonjusticiable. *See Bureau of Employee Relations v. Maine Labor Relations Bd.,* 655 A.2d 326, 327 (Me. 1995). The test for mootness is whether "sufficient practical effects [flow] from the resolution of [the] litigation to justify the application of limited judicial resources." *State v. Gleason,* 404 A.2d 573, 578 (Me. 1979). If the issues presented have lost their controversial vitality "by virtue of legally valid and recognizable supervening circumstances," we will decline to address them. *Good Will Home Ass'n v. Erwin,* 285 A.2d 374, 379 (Me.1971).

■ CST's claim for a permanent injunction prohibiting the MTA "from expending toll revenues for anything other than highway purposes and specifically ... from expending public funds on any consultants, public relations firm[s], or lobbyists who in any way attempt to influence directly or indirectly the outcome of the referendum" is clearly moot. The first part of its request merely restates in broader terms the man-

date in Me. Const. art. IX, § 19 not to spend toll revenues for purposes other than "construction, reconstruction, maintenance and repair of public highways and bridges."[2] An injunction reiterating what State law already forbids, particularly in such broad language, would be meaningless in this situation. The second request is specifically directed towards the 1991 referendum. Not only were there no additional expenditures made (beyond those alleged in the complaint), but the vote on the referendum defeated any plan to widen the turnpike. Because the granting of an injunction preventing expenditure of toll revenues to influence the 1991 referendum's outcome would afford no effective relief to CST, its appeal is rendered moot. *Knowlton v. Rhodes,* 413 A.2d 546, 548 (Me.1980).

■ There are exceptions to the general rule that courts decline to address moot issues. These exceptions apply in instances where (1) sufficient collateral consequences will flow from a determination of the questions presented, (2) the question, although moot in the immediate context, is of great public interest and should be addressed for future guidance of the bar and public, or (3) the issue may be repeatedly presented to the trial court, yet escape review at the appellate level because of its fleeting or determinate nature. *Gleason,* 404 A.2d at 578.

■ CST contends that this case, even if it is moot, presents a situation capable of repetition but evading review. We disagree. Unless the questions that have become moot occur in a context where there is a "reasonable likelihood that the same issues will imminently and repeatedly recur in future similar contexts with serious impact upon important generalized public interests," the deter-

---

**2.** Me. Const. art. IX, § 19 provides:

All revenues derived from fees, excises and license taxes relating to registration, operation and use of vehicles on public highways, and to fuels used for the propulsion of such vehicles shall be expended solely for cost of administration, statutory refunds and adjustments, payment of debts and liabilities incurred in construction and reconstruction of highways and bridges, the cost of construction, reconstruction, maintenance and repair of public highways and bridges under the direction and supervision of a state department having jurisdic-

tion over such highways and bridges and expense for state enforcement of traffic laws and shall not be diverted for any purpose, provided that these limitations shall not apply to revenue from an excise tax on motor vehicles imposed in lieu of personal property tax.

In addition to alleging a violation of section 19, CST's complaint also alleged violations of Me. Const. art. IV, pt. 3, § 1 (extent of legislative power), Me. Const. art. I, § 4 and U.S. Const. amend. I (freedom of speech), and 23 M.R.S.A. § 1974 (1992 & Supp.1994) (purposes for which toll revenues may be used).

mination of those questions should be avoided. *Good Will,* 285 A.2d at 380; *National Council on Compensation Ins. v. Superintendent of Ins.,* 538 A.2d 759, 764 (Me.1988). In order for an injunction to have any effect, not only would there have to be a referendum concerning widening the turnpike, but the MTA would have to be expending funds in a manner identical to that alleged in this instance. Although CST suggests that there is a possibility of another referendum, there is nothing in the record to support a reasonable expectation that the MTA will again engage in similar activity. *See Bancroft & Martin, Inc. v. Local 340, Truck Drivers, Warehousemen & Helpers Union,* 412 A.2d 1216, 1217 (Me.1980); *see also Connors,* 447 A.2d at 824 (no justiciable controversy existed when parties already were in same position that would result if plaintiff's continued use of tractor-truck was enjoined since plaintiff had surrendered possession of the vehicle to defendant twenty months earlier); *Globe Air, Inc. v. Thurston,* 438 A.2d 884, 887–88 (Me.1981) (completion of performance under contract for aerial spraying rendered the plaintiff's claim for injunctive relief moot because there was no evidence to support a "reasonable expectation that [the plaintiff would] be subjected to the same action again."); *Cohen v. Ketchum,* 344 A.2d 387, 393 (Me.1975) (appeal dismissed as moot because the holding of election and voter approval of bond issue rendered the question of whether the Court should enjoin the issuance of future warrants calling for future elections

hypothetical and academic). As no practical effects would flow from the issuance of an injunction against the MTA, and the circumstances do not warrant the application of any exceptions, the Superior Court correctly dismissed CST's claim for injunctive relief as moot.

## II.

CST also contends that it is entitled to attorney fees. Although 42 U.S.C.A. § 1988 authorizes the award of attorney fees to plaintiffs that prevail on their section 1983 claims,[3] *Wyman v. Secretary of State,* 625 A.2d 307, 311 (Me.1993), a section 1983 claim may be maintained only against a "person." [4] Contrary to CST's contention, the MTA is a state entity not subject to suit under section 1983.

A state, state agency, or state official sued in an official capacity is not a "person" subject to a section 1983 action for damages. *Winston v. Maine Technical College Sys.,* 631 A.2d 70, 75 (Me.1993) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 364 (1994); *see also Brooks v. Augusta Mental Health Inst.,* 606 A.2d 789, 791 (Me.1992). We apply a two-part test to determine whether an agency is the equivalent of the State for section 1983 purposes: (1) is the agency an alter ego of the State or is it relatively autonomous,[5] and

**3.** The provision provides:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. § 1681, *et seq.*], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2200bb], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d, *et seq.*], or section 13891 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
42 U.S.C.A. § 1988(b) (1994).

**4.** 42 U.S.C.A. § 1983 (1994) provides:

Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depriva-

tion of any rights, privileges, or immunities secured by the Constitution and laws, *shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.* For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
(Emphasis added.)

**5.** The factors that inform our decision are similar to those underlying our holding in *Winston,* 631 A.2d at 75–76. The MTA was created by statute for public purposes and performs "a governmental function" in carrying out its statutory mandate. 23 M.R.S.A. § 1961(4) (1992). Its board members are appointed by the Governor and are subject to review and confirmation by the Legislature, and the Commissioner of Transportation is an ex officio member of the board. *Id.* § 1965(2)(A). The MTA also has the power to

(2) would funds to pay a judgment against the agency come from the state treasury. *Winston,* 631 A.2d at 75.

First, the State is the real party in interest in the Authority's activities. *See Nelson v. Maine Turnpike Auth.,* 157 Me. 174, 170 A.2d 687, 690 (1961) (holding that MTA is State for purposes of tort claims). Despite its separate corporate identity from the State, the MTA is not independent of state supervision; it may not enter into contracts, or perform construction on the turnpike without approval from the Department of Transportation. It is the State that "ultimately benefits from the operation of the Turnpike," *id.* at 689, which was constructed, and is operated and maintained, by the MTA, an entity established by the State for that purpose. *Id.* 170 A.2d at 688.

Second, although the MTA is self-funded through the use of toll monies, it is required to provide substantial funds, i.e., its operating surplus, annually to the Department of Transportation. 23 M.R.S.A. § 1961(2) (1994). Payment of a judgment from MTA funds would reduce the amount it had available to provide to the Department of Transportation, impacting on the State's fiscal autonomy.[6] *See Winston,* 631 A.2d at 76.

The court did not err in determining that the MTA was a state entity and was not subject to claims brought pursuant to section 1983. Because CST may not maintain a section 1983 claim against the MTA, there

---

acquire and hold real property by the exercise of eminent domain. *Id.* § 1965(1)(F)–(G). All contracts relating to construction on the turnpike must be approved by the Department of Transportation, which must supervise all such construction projects. *Id.* § 1966(2). Although the MTA can sue and be sued, *id.* § 1965(1)(A), it is declared a "state entity" in the Maine Tort Claims Act. 14 M.R.S.A. § 8102(4) (1994).

**6.** CST correctly points out that the recent United States Supreme Court decision in *Hess v. Port Auth. Trans–Hudson Corp.,* —— U.S. ——, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), implicitly overrules *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.,* 819 F.2d 413 (3d Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987), which the MTA cites in support of its position that it is a State entity. In *Hess,* the Supreme Court held that the Port Authority Trans–Hudson Corp. (PATH), a bistate

was no error in the court's determination that attorney fees were not obtainable.

The entry is:

Judgment affirmed.

All concurring.

railway, is not entitled to the Eleventh Amendment immunity that a state enjoys in federal court. —— U.S. at ——, 115 S.Ct. at 400. The Supreme Court found two factors most relevant. First, PATH is a bistate entity created by compact, and therefore, is not subject to the unilateral control of any single state. *Id.* at ——, 115 S.Ct. at 401–02. Second, PATH is structured to be self-sustaining, and is financially self-sufficient. The Court found that no judgment against PATH would " 'expend itself against state treasuries,' " *id.* at ——, 115 S.Ct. at 405 (citation omitted), a primary reason for the states' Eleventh Amendment immunity. *See id.* at ——, 115 S.Ct. at 400, 404.

The MTA is not an entity created by compact with any other state. Furthermore, the analysis of a state's Eleventh Amendment immunity in federal court, and the analysis of a state's immunity from section 1983 claims in its own courts, are two distinct and independent questions.