1999 ME 121

**MAINE CIVIL LIBERTIES UNION et al.**

v.

**CITY OF SOUTH PORTLAND.**

Supreme Judicial Court of Maine.

Argued June 8, 1999.
Decided July 29, 1999.

David Lourie (orally), Cape Elizabeth, for the plaintiff.

Mary Kahl (orally), South Portland, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] The City of South Portland appeals from a summary judgment entered in the Superior Court (Cumberland County, *Cole, J.*) in favor of the Maine Civil Liberties Union, and two South Portland citizens, Nancy Crowell and Judith Kimball.[1] The City contends that the court erred by concluding that its City Council failed to comply with the notice requirements of 21–A M.R.S.A. § 631 (1993 & Supp.1998) when the City Council voted to consolidate the City's five voting districts into one voting district for a special state election. Because the election in which the City sought to consolidate its voting districts was held well over a year ago, and because the circumstances under which the attempted consolidation arose are not likely to recur, we dismiss the appeal as moot.

[¶ 2] The facts are essentially undisputed. On October 20, 1997, the Secretary of State's office announced that a "People's Veto" petition had received sufficient signatures to require a special state election on whether recently enacted amendments to Maine's Human Rights Act that prohibited discrimination based on sexual orientation should be repealed.[2] During the week of November 24, 1997, the Governor scheduled the special election for February 10, 1998. Because the City Council anticipated a low voter turnout and problems with being able to hire sufficient election workers, it planned to consolidate the

---

1. Hereinafter the appellee's are referred to collectively as the MCLU.

2. The Legislature amended Maine's Human Rights Act "to prevent discrimination in employment, housing or access to public accommodations on account of ... sexual orientation," 5 M.R.S.A. § 4552 (Supp.1997), effective pending the "People's Veto" proceeding. Pursuant to Maine's Constitution, most enacted legislation takes effect 90 days after the recess of that session of the Legislature. *See* Me. Const. art. IV, pt. 3, § 16. During that 90 days, citizens have the right to petition the Secretary of State and request that one or more "Acts, bills, resolves or resolutions" passed by the Legislature be referred to the people for a state wide election.

Me. Const. art. IV, pt. 3, § 17. The petition, the filing of which suspends the effect of the legislation, must be signed by electors numbering at least 10% of the total vote cast in the last gubernatorial election. *See id.* Once the petition is received, "the Governor by public proclamation shall give notice thereof and of the time when such measure is to be voted on by the people, which shall be at the next statewide election not less than 60 days after such proclamation, or *in case of no statewide election within 6 months thereafter the Governor may order such measure submitted to the people at a special election not less than 60 days nor more than 6 months after proclamation thereof.*" *Id.* (Emphasis added.)

City's five voting districts into one district for the special election. Pursuant to 21–A M.R.S.A. § 631, "municipal officers may divide a town or ward into convenient voting districts *after public notice and hearing* held at least 60 days before the election. . . . Voting districts, once established, may be consolidated into a lesser number of districts by following the same procedure."[3] (Emphasis added.) Thus, before consolidating voting districts for the special election scheduled for February 10, 1998, section 631 required the City Council to provide public notice and a hearing before December 12, 1997.

[¶ 3] The City Council's regular meetings were scheduled for December 1st and 15th of 1997. The December 1st meeting fell on the Monday following the Thanksgiving holiday and less than one week after the Governor had announced the date of the special election vote. Because the City Council lacked the time to comply with its rules for placing items on the agenda for that meeting, and because the December 15th meeting was less than 60 days before the referendum, Mayor Susan Avery called a special City Council meeting for December 8, 1997. The meeting would immediately precede the regularly scheduled City Council workshop. Although City Council workshops are open to the public, the normal practice is not to allow public comment.

[¶ 4] The City Council published notice of the special meeting in the Portland Press Herald and the agenda for the meeting was posted at four locations—City Hall, the recreation center, the main library, and the branch library. The Agenda provided:

**H. ACTION ON OLD AND NEW BUSINESS**

1. ORDER # 85–97/98—setting the district lines and polling place for the Special State Election on February 10, 1998. Passage requires majority vote.

In addition, the City Clerk notified the Portland Press Herald and the American Journal of the special meeting.

[¶ 5] The special City Council meeting was held on December 8, 1997. Two members of the public, Clarence W. Beckwith and Ray L. Lee, attended the special meeting and spoke against the proposal to consolidate the voting districts. The two men stated in affidavits that they regularly attended and participated in City Council meetings, but they were unaware of the special meeting until the evening of December 8th. After the two men spoke, the City Council voted 4–3 to authorize the consolidation and the designation of the main library as the only polling location. The City Council published a notice in the Portland Press Herald and the American Journal advising the public that voting for the February 10, 1998, special election would take place only at the main library.

[¶ 6] On December 24, 1997, the MCLU filed a complaint for declaratory and injunctive relief, alleging violations of 21–A M.R.S.A. § 631 and the South Portland City Charter. The complaint asserted that consolidating voting districts would impede voting and reduce voter turnout. It sought: (1) a temporary restraining order (TRO) to prevent the City Council

---

3. Section 631(1) provides
A municipality may be divided into voting districts as follows.
1. **Procedure.** The municipal officers may divide a town or ward into convenient voting districts after public notice and hearing held at least 60 days before any election. After the hearing, the municipal officers must prepare a certificate defining the limits of each district. They must file the certificate with the clerk who shall record it. The clerk shall post an attested copy of the certificate in a conspicuous, public place in the town or ward, and shall publish it in at least one newspaper having general circulation in the municipality at least 30 days before election day. The clerk shall file an attested copy of the certificate with the Secretary of State. Voting districts, once established, may be consolidated into a lesser number of districts by following the same procedure. Voting districts may be established or consolidated under this section for all or only certain classes of elections. . . .

from consolidating the voting districts for the February 10, 1998 election: (2) a declaration that 21–A M.R.S.A. § 631 requires that, prior to consolidating voting districts, the City Council must provide notice making clear that a public hearing will be held and describing the issue being considered at the meeting; and (3) a declaration that consolidating the City's voting districts violated the South Portland City Charter.[4] The City opposed the TRO and filed a motion for a summary judgment. The Superior Court granted the MCLU's motion for a TRO after concluding that it had met its burden of proving that the voters would suffer irreparable injury if the injunction was not granted; that such injury outweighed any harm that granting the injunctive relief would inflict on the City; that the MCLU had exhibited a likelihood of success on the merits; and that the public interest would not be adversely affected by granting the injunction. *See Ingraham v. University of Maine,* 441 A.2d 691, 693 (Me.1982).

[¶ 7] The City did not appeal the temporary restraining order. The City made available voting places in the five voting districts within the City for the election that was held on February 10, 1998. The City, however, did pursue its motion for a summary judgment and, in response, the MCLU filed its own summary judgment motion. The court granted summary judgment to the MCLU after concluding that the terms "public notice and hearing" required the City Council to "not only inform the public of the specific proposed action to be taken but also that a hearing

was going to be held on the proposed action. Otherwise, the requirement of public notice and hearing would be useless." The City then filed this appeal.

[¶ 8] We only review cases that present a justiciable controversy. *See Campaign for Sensible Transp. v. Maine Turnpike Auth.,* 658 A.2d 213, 215 (Me. 1995). " 'A justiciable controversy is a claim of present and fixed rights, as opposed to hypothetical or future rights, asserted by one party against another who has an interest in contesting the claim.' " *Id.* (quoting *Connors v. International Harvester Credit Corp.,* 447 A.2d 822, 824 (Me.1982)). "If issues become moot, an appeal is nonjusticiable." *Sordyl v. Sordyl,* 1997 ME 87, ¶ 4, 692 A.2d 1386, 1387 (citation omitted). "The test for mootness is whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources." *Nugent v. Town of Camden,* 1998 ME 92, ¶ 6, 710 A.2d 245, 247 (citing *Campaign for Sensible Transp.,* 658 A.2d at 215). "A dispute loses its controversial vitality when a decision by this court would not provide an appellant any real or effective relief."[5] *International Paper Co. v. United Paperworkers Int'l Union,* 551 A.2d 1356, 1360–61 (Me.1988).

[¶ 9] Under the circumstances present here, no meaningful relief could be afforded to the City. The City was prevented by a temporary restraining order from consolidating its voting districts for a special state election. The City did not

---

4. The MCLU also contends that even if the City had fully complied with what it contends are the notice requirements of 21–A M.R.S.A. § 631, its action was prohibited by section 1001 of the South Portland City Charter which requires that "[t]here shall be one, at least, voting place established in each of the 5 [voting] districts ... " and further provides that "[o]nce established, district boundaries may not be revised until after the next decennial Federal Census of Population." The Superior Court did not address this issue. We also do not address this issue because we conclude it is moot.

5. Mootness and standing are different concepts. Standing to sue means that an individual has a sufficient personal stake in the controversy to obtain judicial resolution. *See Halfway House, Inc. v. City of Portland,* 670 A.2d 1377, 1379 (Me.1996). "Mootness, on the other hand, 'is the doctrine of standing set in a time frame: The requisite personal interest that [existed] at the commencement of litigation (standing) must continue throughout its existence (mootness).' " *Id.* (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When,* 82 YALE L. REV. 1363, 1384 (1971)).

appeal that order prior to the election that was held on February 10, 1998. Thus, on its face, the appeal is moot. Even though an appeal is technically moot, we have recognized three exceptions to the mootness doctrine:

(1) sufficient collateral consequences will result from the determination of the questions presented so as to justify relief; (2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public, [the court] may address; or (3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*Halfway House,* 670 A.2d at 1380 (citations omitted).

 [¶ 10] The Superior Court determined and the parties contend that this case presents an issue capable of repetition but evading review. We are not persuaded, however, that the circumstances of this case are likely to be repeated. "Unless the questions that have become moot occur in a context where there is a 'reasonable likelihood that the same issues will imminently and repeatedly recur in future similar contexts with serious impact upon important generalized public interests,' the determination of those questions should be avoided." *Campaign for Sensible Transp.,* 658 A.2d at 215–16 (quoting *Good Will Home Ass'n v. Erwin,* 285 A.2d 374, 380 (Me.1971)).

[¶ 11] The date for the "Peoples Veto" special election, February 10, 1998, was not established until the week of November 24, 1997. Although the special election could have been held as late as six months after receipt of the "People's Veto" petition, *see* Me. Const. art. 4, pt. 3, § 17, the Governor called for an election date that was less than three months away and was in the month of February, when weather conditions are likely to reduce voter turnout. Because 21-A M.R.S.A. § 631 requires municipal officers planning to consolidate a city's voting districts to provide public notice and a hearing 60 days before the election, the timing of the announcement precluded consideration of the issue at a regularly scheduled City Council meeting. As a result, a special meeting of the City Council was held just prior to a City Council workshop. The MCLU contends that the specificity of the notice is important because public comment is not normally allowed at City Council workshops and, without the notice specifying that consolidation of the voting districts was on the agenda, the public would be unaware that the purpose of the hearing was to consider consolidation. For those circumstances to recur, the City must not only seek to consolidate its voting districts for a future election, but the setting of the election date must be such that the issue of consolidation could not be considered at a regular City Council meeting. We consider the occurrence of such a circumstance to be unlikely. The issue of notice presented here, therefore, is not likely to be revisited in a future case. Because this appeal presents issues that are moot and because the unique circumstances surrounding this appeal are unlikely to be repeated, we dismiss the appeal as moot.

The entry is:

Appeal dismissed.

