STATE OF MAINE
Knox, S.S., Clerk's Office
SUPERIOR COURT

JUN 14 2002

RECEIVED AND FILED
Susan Guillette, Clerk

STATE OF MAINE

KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-058

JRA -KNO- 6/12/2002

PRISCILLA ADAMS SMITH,

Plaintiff

v.

**DECISION AND ORDER**

JAMES W. BRANNAN
and KAYE PARKER JEX,

Defendants


DONALD L. GARBRECHT
LAW LIBRARY

JUN 26 2002

## I.    Introduction.

This matter is before the court on the motion of defendant Kaye Parker Jex (Jex) to dismiss this action against her. She relies on two bases to achieve this end. The first is that this court lacks personal jurisdiction over her and the second is that the plaintiff lacks standing to assert the claim against her.

For the reasons set forth herein, the motion is to be denied.

## II.    Lack of Personal Jurisdiction..

Pursuant to M.R. Civ. P. 12(b)(2), a defendant may seek dismissal of an action pending against her for lack of personal jurisdiction. Jex has asserted in her motion that her actions as they may relate to the plaintiff occurred in Connecticut and not in Maine so that the latter's courts may not exercise jurisdiction over her.

Maine's long-arm statute, 14 M.R.S.A. § 704-A(1), provides that Maine citizens are to have an effective means of redress against a non-resident "who, through certain significant minimal contacts with this State, incur obligations to citizens entitled to the State's protection." Accordingly, any person who does any act in this State, including the transaction of any business, or the "[d]oing or causing a tortious act to be done, or

causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State," submits herself to the jurisdiction of the courts of this State. 14 M.R.S.A. § 704-A(2)(A), (B).

The exercise of personal jurisdiction over a nonresident by our courts pursuant to this statute is permissible as long as that use of power is consistent with the Due Process Clause of the United States Constitution. *Suttie v. Sloan Sales, Inc.*, 1998 ME 121, ¶ 4; 711 A.2d 1285, 1286. That being so, in applying our long-arm statute, this court need only consider "whether due process requirements have been satisfied." *Id.* (citing *Mahon v. East Moline Metal Prods.*, 579 A.2d 255, 256 (Me. 1990)). Those due process requirements are that: (1) Maine "have a legitimate interest in the subject matter of the controversy"; (2) the defendant by [her] conduct "reasonably could have anticipated litigation in Maine"; and (3) the exercise of jurisdiction by our courts "comports with traditional notions of fair play and substantial justice." *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995).

When a defendant, as here, challenges the exercise of personal jurisdiction over her, the plaintiff has the burden of persuasion to establish that jurisdiction is proper under the first two parts of this test. *Id.* at 594. This obligation may be met via specific facts alleged in the record which is to be "construed in a light most favorable to the plaintiff." *Suttie v. Sloan Sales, id.* at ¶ 4. Once the plaintiff has made this showing, the burden shifts to the defendants to address the third due process requirement, that is, she is to "establish that asserting jurisdiction does not comport with traditional motions of fair play and substantial justice. *Id.*

In this case, the plaintiff, Priscilla Adams Smith (Priscilla), alleges that Jex tortiously interfered with an expectancy interest from her husband, Richard's, estate.

2

Expressed in a shorthand way, Priscilla claims that Richard promised her that his will or estate plan would provide her with $3,000 a month in income upon his death. She says that Richard went to attorney James W. Brannan (Brannan), a co-defendant in this action, on October 28, 1997, in order to effectuate this plan by having his estate plan or will altered so that she would receive this "annuity." She further states that on this occasion Richard and Brannan had a telephone conference call from Brannan's Rockland office with Jex, who was Richard's "primary estate planning attorney," Complaint, ¶ 38, with instructions relayed to her that his will be amended to provide for this monthly income for Priscilla after his death. Priscilla alleges that Jex argued against a change because it would be prejudicial to Richard's children who would be dependent upon the residuary trust created by his estate plan for their benefit because it would require invasion of the principal of this trust to satisfy payment of this monthly sum to Priscilla.

It is alleged that further argument and discussion occurred among Richard, Brannan and Jex with Richard continuing to insist that his estate plan be altered as he wished. Ultimately, the plaintiff alleges, Jex instructed Brannan to draft an amendment to the deed of trust so that it provided for a payment to Priscilla of $3,000 per month from the marital trust, as opposed to the residuary trust, which had been created by the estate plan. In accordance with these instructions, Brannan drafted the amendment and faxed a copy to Jex for her approval which she thereafter provided. On October 31, 1997, Richard returned to Brannan's office and executed the amendment to the trust. It was sent back to Connecticut where it was accepted by the trustees in the presence of, and after consultation with, Jex. Throughout these transactions, the plaintiff states, Jex knew that under the estate plan the residuary trust was to be funded by the first $625,000 of Richard's intangible assets in order to take advantage of the unified estate

3

tax credit under federal estate tax law and that only the balance would fund the marital trust created under the plan. Further, it is alleged that Jex knew that the balance of Richard's assets would be insufficient to fund the residual trust at the level of $625,000 so that the marital trust would be unfunded and Priscilla would never receive a $3,000 monthly payment from it. Instead, she claims, under the estate plan she would only receive payments from the residuary trust as its trustee, in his discretion, might allow. Because the trustee, Richard's son-in-law, would benefit indirectly from the residuary trust, it would be unlikely that he would make any payments from it to Priscilla. Since Richard's death in 1998 and the admission of his will to probate, the personal representative and the trustee of the residuary trust have told Priscilla, through Brannan, that she would receive no payments from her late husband's estate. All this being so, Priscilla claims, Jex misled her client Richard into believing that his estate plan would provide for this widow's welfare via a $3,000 monthly stipend from his estate plan's marital trust when, in fact, she knew that was not possible because it would be unfunded. She says Jex did this in order to preserve Richard's estate for the benefit of his children with whom she had a relationship as a friend and as an attorney. She claims that Jex did this to interfere with and frustrate Richard's estate plan and Priscilla's expectancy interest.

In her complaint, Priscilla cites a number of Maine connections to the events which she alleges underlie her action against Jex. They may be briefly restated as follows:

- In 1991 Jex drafted the antenuptial agreement for Richard and Priscilla at which time Priscilla was a Maine resident. At the same time Jex drafted a

4

will for Richard, then a Connecticut resident, which was to be coordinated with the prenuptial agreement.

- On November 8, 1991, Richard and Priscilla married and moved to Priscilla's home in Rockland, Maine, where Richard "took up residence." Complaint, ¶ 10.

- In 1994 Jex prepared two wills for Richard, one of which was intended to dispose of his assets in the British Virgin Islands (BVI), the other to dispose of the remainder of his assets.

- In 1996, because of poor health, Richard directed Jex to review and revise his estate plan as a Maine resident. In furtherance of this goal, Brannan, an attorney with an office in Rockland, Maine, was asked by Richard, Priscilla and Jex to review the 1994 will and estate plan to assure conformity with Maine law. Brannan accepted this assignment and reported on his review of Richard's estate to Richard and Priscilla with a copy to Jex. He also provided supplemental comments to Jex by letter with a suggestion to her of language to amend the deed of trust. Complaint, ¶ 25, Exhibit C-2.

- Jex prepared revisions of the 1994 will and changed the language in the deed of trust as Brannan had suggested. Richard executed these documents.

- As noted earlier, Richard came to Brannan's office on October 28, 1997, where they placed the call to Jex in Connecticut in order to discuss changes in Richard's estate plan with her.

- As also described herein, Brannan drafted an amendment to the deed of trust as directed by Jex, faxed it to her from Maine to Connecticut for her approval, and upon this event, had Richard back in his Maine office to execute the amendment.

- Richard's will has been admitted to probate in Knox County Probate Court in Maine.

In her challenge to the exercise of personal jurisdiction over this dispute in Maine courts, Jex has included her affidavit with her motion. In it, she asserts the following factual allegations as they may relate to jurisdiction:

- She is a Connecticut resident licensed to practice in that state but not in Maine where she has never practiced.

- She drafted the antenuptial agreement in Connecticut for Richard.

- She visited Richard and Priscilla in Maine with her husband on a weekend each Fall.

- In 1994 she drafted the two wills for Richard, one of which dealt solely with the BVI property. In 1996, she was advised that Richard wanted to make changes in his wills and drafted those instruments, incorporating suggestions made by Brannan. The wills and deeds of trusts she created were executed in Connecticut and made subject to both Maine and Connecticut law.[1]

---

[1] The will, Exhibit E to the Complaint, reads, at Article Seventh, "I intend this will to be subject to the laws of the State of Maine with the exception of the powers set forth in Article Fifth." Article Fifth purports to give his executors "as much flexibility as possible in the administration of my estate" and grants them all powers under Connecticut's Fiduciary Powers Act.

- She acknowledges the October, 1997 telephone call with Smith from Brannan's office and later answering Brannan's question concerning the taxability of the trust.

- She advises that this second amendment to the trust was sent to her in Connecticut where it was signed by the trustees, having been signed in Maine by Richard. She says she made no changes in this second amendment to the deed of trust and presented it to the trustees for their signature as Brannan had prepared it.

- While she acknowledges drafting the first amendments to the trust and the new wills in 1996, she says she did so in Connecticut in accordance with Brannan's advice.

In the balance of her affidavit, Jex denies any tortious or culpable activity. Thus, she says:

- The October 1997 phone call made no reference to $3,000 monthly payments to Priscilla, Richard did not tell her what changes he wanted to have made, and her only role was to send the estate documents to Brannan, her offer to assist in the process having been refused by Richard.

- She did not draft the 1997 amendment affecting the marital trust and had no knowledge of the value of Richard's estate and its adequacy to fund the marital trust.

- By 1997, she was no longer providing any legal services for Richard who no longer had a residence in Connecticut.

- She has never had any close relationship to Richard's children.

In response to the motion and Jex's affidavit, the plaintiff has filed the affidavit of her attorney which tells its reader that its attachment is a letter from attorney Brannan which advises that:

- On October 28, 1997, Richard had a conversation with Jex on Brannan's speaker phone in which Richard reiterated his desire for Priscilla to have one-half of his investment income. He had told Brannan that his annual investment income was $72,000. Richard and Jex also discussed his intent to provide for his children.

- At Jex's direction, after her discussion with Richard, Brannan prepared the second amendment to the trust.[2]

- Jex was Richard's "long time estate planning attorney" who Brannan felt should review and approve any changes in his estate plan. Affidavit of Ralph A. Dyer, Exhibit A.

- Brannan told Richard he could not help him with changes in his estate plan and that he needed to deal with his own attorney [Jex] in Connecticut.

From all of this material, it appears plain that if any tortious activity occurred, it occurred on October 28, 1997, and the days and occasions which followed. That being so, has the plaintiff established the first two due process requirements so that Maine may properly exercise jurisdiction over the defendant who, allegedly, was the tortfeasor in these events?

As noted, *supra*, the first requirement is whether Maine has a legitimate interest in the subject matter of this controversy. In this regard, the disputes between the

---

[2] It is this amendment to the marital trust which requires the trustees to pay Priscilla $3,000 per month from trust income and, if necessary, from principal.

8

parties as to Jex's role in the events of October 28, 1997, and afterwards are not determinative of this question. This is so because the merits of the plaintiff's case are not in question, only the State's interest in its subject matter. Thus, in this regard, the plaintiff need only establish a *prima facie* case showing that jurisdiction exists and her written allegations supporting a claim of jurisdiction "are to be construed in [her] favor." *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1191 (Me. 1993). In the court's view, under this standard, it must be concluded that she has met the first due process requirement and established Maine's interest in this controversy.

The following allegations support the conclusion that Maine has a legitimate interest in this controversy:

- The plaintiff and Richard were Maine residents and were throughout the time period in which Jex had a role in developing Richard's estate plan after Richard and Priscilla were married.

- Richard was a Maine resident at the time of his death.

- Richard's will has been admitted to probate in Maine.

- Presumably Richard had some personal property and intangible property here when he died as a Maine resident.

- Richard's will specifically provided that it be interpreted under Maine law, except as to the authority of the estate's personal representatives. This will must affect his Maine property.

- Priscilla's welfare as a widow residing in Maine is of state interest.

- A Maine lawyer participated in the drafting of the amendments to Richard's estate plan in conjunction with the defendant.

9

- If the tort occurred as alleged, it would have an effect on the welfare of a Maine resident and the administration of a Maine estate.

While Jex denies the tortious activity alleged, she does not deny the jurisdictional facts outlined nor can she deny the potential impact of her claimed activities here upon Priscilla, or the administration of Richard's estate. She also does not deny her relationship to the companion malpractice case against a Maine attorney. Indeed, Priscilla's recitation of jurisdictional facts is to be construed favorably toward her claim of jurisdiction. *Suttie*, 1999 ME 121, ¶ 4, 711 A.2d at 1286. Moreover, even if it should develop that the claims against Jex are meritless, at a minimum, Priscilla has not only shown the ample factual bases for Maine's interest in this litigation, she has also demonstrated that Jex, as a non-resident attorney, participated in the development of an estate plan for a Maine resident that was to be interpreted under Maine law via communication originating in Maine. These acts strongly suggest obligations which Jex undertook that affected Maine people and interests so that this state has a legitimate interest in providing redress for a Maine resident against this non-resident defendant. *Electronic Media International v. Pioneer Communications of America*, 586 A.2d 1257, 1259 (Me. 1991).

The analysis of the second prong of the due process test, namely whether or not the defendant by her conduct reasonably should have anticipated litigation in Maine, *Suttie*, 1999 ME 121, ¶ 4, 711 A.2d at 1286, relies on much the same facts, but also needs to focus on the defendant's activities here. In this regard, it can first be found that there is no evidence that the defendant was ever physically in Maine for the purpose of working on Richard's estate plan, but the test to be applied does not depend on physical presence, but whether a non-resident has purposefully, by some act, availed herself of

the privilege of conducting activities here thereby invoking the benefits and protection of our laws, *Electronic Media International v. Pioneer Communications of America,* 586 A.2d at 1259, or has created a continuing obligation between herself and a resident here. *Harriman v. Demoulas Supermarkets,* 518 A.2d 1035, 1037 (Me. 1986). Thus, a defendant's contacts cannot be merely "random, fortuitous or attenuated." *Electronic Media International v. Pioneer Communications of America,* 586 A.2d at 1259.

In the court's view, the plaintiff has satisfied this test. The court reaches this conclusion based on the same facts which support the finding in the plaintiff's favor on the first due process test. In addition, even though Jex, via her affidavit, has denied any active role in drafting the offending October, 1997, second amendment to the deed of trust and the provision of any legal services to Richard by that time, the counter-affidavit submitted by the plaintiff rebuts those denials and alleges that the 1997 amendment was drafted at her direction because she was Richard's "long time estate planning attorney." Affidavit of Ralph A. Dyer, Exhibit A. This exchange of allegations through affidavits meets the plaintiff's obligation to respond to a motion to dismiss grounded on a jurisdictional challenge with a showing that goes beyond the pleadings and provides affirmative proof. *Dorf v. Complastik,* 1999 ME 133, ¶ 13, 735 A.2d 984, 988. Just as with allegations that appear only in the record, the assertions relied on by the plaintiff in an affidavit "'need only make a prima facie showing that jurisdiction exists' and the plaintiff's written allegations of jurisdictional facts should be construed in its favor." *Id.* at 14 (quoting *Suttie v. Sloan Sales, Inc.,* 1998 ME 121, ¶ 5, 711 A.2d at 1286).

Applying this approach to the uncontested jurisdictional facts already outlined herein and to those which the plaintiff has rebutted, it must be concluded for purposes of acting on this motion that Jex did avail herself of the privileges of conducting

activities in Maine by endeavoring to practice law here. That is to say, she gave legal advice to a Maine resident concerning his estate which was to be administered here and interpreted under Maine law. Indeed, disregarding the denial of her role in the October 1997 events, it may be found that this defendant on at least three occasions performed substantive legal work for a Maine resident that would affect a Maine estate, a Maine heir, and the distribution of some property located here. This, of course, created an on-going obligation to this client, his estate, and his heirs, which, the plaintiff says, continued on through the events of October, 1997, and thereafter. *Harriman v. Demoulas Supermarkets*, 518 A.2d at 1037. These contacts were not merely "random, fortuitous or attenuated." *Electronic Media International v. Pioneer Communications*, 586 A.2d at 1259. Moreover, if the defendant committed the tort alleged by the plaintiff, she has wronged a Maine citizen by her involvement in the drafting and execution of documents for that purpose which have the related Maine nexus already here described. All this being so, the court concludes that the plaintiff has satisfactorily established that defendant Jex could reasonably have anticipated litigation in Maine over her role in preparing Richard's estate plan. *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995).

Because the plaintiff has established a *prima facie* case as to the first two elements of the due process test, the burden must shift to the defendant to "establish that asserting jurisdiction does not comport with traditional notions of fair play and substantial justice." *Id.* To do so, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," so that litigation here would be "so gravely difficult and inconvenient that [she] would be at a severe disadvantage in comparison to [plaintiff]." *Caluri v. Rypkema*, 570 A.2d 830, 833 (Me. 1990) (internal quotations omitted).

12

In the court's view, the defendant has not made a showing that satisfies this test. Her sole arguments in support of her contention that Maine's assumption of jurisdiction is unreasonable is that she and the personal representatives of the estate live in Connecticut and would have to come to Maine for depositions and trial. She also speculates that she may have some other witnesses in that state who might also be similarly inconvenienced.

While neither party has so stated, it is worth making the obvious observation that Connecticut is not far from Maine and that travel between the two states is easily accomplished. Moreover, the two personal representatives already have a commitment to Maine's legal processes in that they are responsible to the Knox County Probate Court for the administration of Richard's estate. Thus, the person remaining is Jex who has acknowledged visiting Maine in the past on social occasions which, it may be assumed, created little hardship to her. All this being so, and there being no basis to believe there are other Connecticut witnesses, it must be concluded that it would not be gravely difficult or inconvenient for Jex to litigate this case in Maine. Indeed, contrary to her argument, her appearance here may be for trial only as no Maine rule requires her to be deposed in this State.

Last, as the plaintiff has argued, if this case were not prosecuted here, it would have to be litigated in Connecticut. Such a division in this case would work obvious hardships and impose additional costs on the plaintiff who, in essence, would have to present the same facts twice, once in Maine in her case against Brannan, and then in Connecticut against Jex.

Taking all the allegations here in the aggregate, the court cannot find that the litigation of this case in Maine fails to "comport with traditional notions of fair play and

13

substantial justice." *Murphy v. Keenan*, 667 A.2d at 593. This is because defendant Jex has failed to present a compelling case that the prosecution of the matter here would "be so gravely difficult and inconvenient that [she] would be at a severe disadvantage in comparison to [plaintiff]." *Caluri v. Rypkema*, 570 A.2d at 830. Indeed, based on the material presented to the court, it would appear that the opposite of this proposition is true.

## III. Standing.

Defendant Jex also seeks to have this case dismissed against her via M.R. Civ. P. 12(b)(6), that is, for "failure to state a claim upon which relief can be granted," because, she says, the plaintiff has no standing to prosecute the case. This is so, Jex argues, because she had no duty to the plaintiff and did not interfere with any expectancy interest the latter may have had in her husband's estate.

A motion to dismiss under M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Seacoast Hangar Condominium II Assoc. v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166, 1171. In undertaking an examination of the sufficiency of the complaint, the court is to review the material allegations as having been admitted and view the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *New Orleans Tanker Corp. v. Dep't of Transportation*, 1999 ME 67, ¶ 3, 778 A.2d 673, 674). Dismissal is only appropriate "when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that [she] might prove in support of [her] claim." *Id.*

The elements of the tort of intentional interference with an expectancy interest are "(1) the existence of an expectancy of inheritance; (2) an intentional interference by a

14

defendant through tortious conduct, such as fraud, duress or undue influence; (3) reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and (4) damage resulting from that interference." *Morrill v. Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039, 1041-42.

Reading the complaint in the light most favorable to the plaintiff, it appears that all five elements are there adequately alleged. Priscilla claims an expectancy interest in her husband's estate, reliance by Richard on Jex's misleading advice which was intentionally communicated to him to benefit others, that she, Priscilla, could reasonably have expected the $3,000 monthly annuity but for this interference, and the loss of that annuity because of Jex's interference. These allegations establish the elements of this tort which, if ultimately established at trial, would entitle the plaintiff to recover damages.

As such, this case cannot be dismissed simply on the basis of this defendant's denials. Moreover, as the plaintiff has argued, the case on which the defendant relies, *Nevin v. Union Trust Co.*, 1999 ME 47, 726 A.2d 694, is simply inapplicable to the controversy in this case. In *Nevin*, the plaintiffs sued a law firm for professional malpractice because of its negligence in establishing and carrying out an elaborate estate plan by which they, the plaintiffs, would become beneficiaries. The Law Court found that because the plaintiffs were not the firm's clients they had no standing to sue. Here, while, it is true that Priscilla may not have been Jex's client, her cause of action against Jex does rest on a claim of professional negligence. Instead, as noted, Priscilla's claim is based on the distinct tort of intentional interference with an expectancy interest. Proof of Jex's capacity as an attorney under this theory of recovery is unnecessary, nor will the plaintiff here have to establish professional malpractice or any duty that Jex

15

might have to Priscilla as an attorney. Accordingly, the case at bar is distinguishable from *Nevin v. Union Trust*, and no issues of standing generated by an attorney/client relationship are germane to its prosecution.

From this, the court must determine that this case cannot be dismissed on the grounds proposed by this defendant, that is, for "failure to state a claim upon which relief can be granted." M.R. Civ. P. 12(b)(6).

## IV. Conclusion.

For the reasons stated herein, Defendant Jex's Motion to Dismiss is DENIED.

So ordered.

Dated: June___12___, 2002

John R. Atwood
Justice, Superior Court

16