2011 ME 48

**ANTHEM HEALTH PLANS
OF MAINE, INC.**

v.

**SUPERINTENDENT OF INSURANCE.**

Supreme Judicial Court of Maine.

Argued: Nov. 10, 2010.

Decided: April 21, 2011.

Christopher T. Roach, Esq. (orally), Catherine R. Connors, Esq., Lucus A. Ritchie, Esq., Joshua D. Dunlap, Esq., Pierce Atwood LLP, Portland, ME, for Anthem Health Plans of Maine, Inc.

Janet T. Mills, Attorney General, Thomas C. Sturtevant, Jr., Asst. Atty. Gen. (orally), Andrew L. Black, Asst. Atty. Gen., Office of the Attorney General, Augusta, ME, for the Superintendent of Insurance.

Rufus E. Brown, Esq., Brown & Burke, Portland, ME, Kay Noonan, Esq., General Counsel, Kansas City, MO, for amicus curiae National Association of Insurance Commissioners.

Joseph P. Ditré, Esq., Mia S. Poliquin Pross, Esq., Andrea L. Irwin, Esq., Consumers for Affordable Health Care, Augusta, ME, for amicus curiae Consumers for Affordable Health Care Coalition.

Peter DeTroy, Esq., Russell Pierce, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for amicus curiae Maine State Chamber of Commerce.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, SILVER, GORMAN, and JABAR, JJ.

Dissent: LEVY, J., and MEAD, J.

SAUFLEY, C.J.

[¶ 1] Anthem Health Plans of Maine, Inc., asks us to determine whether the Maine Superintendent of Insurance may establish rates for individual health insurance products pursuant to which the insurer will not make a profit, but will break even. Because (1) the year in which the challenged rates were effective has passed, and new rates have gone into effect, (2) a favorable decision on the merits could not provide Anthem with any effective financial relief, and (3) both federal and state laws are in transition, we determine that the controversy has lost its vitality and that there exists no basis for the Court to address Anthem's appeal from the decision entered in the Business and Consumer Docket (*Humphrey, C.J.*), pursuant to M.R. Civ. P. 80C, declining to set aside the Superintendent's rate setting for 2009. We therefore dismiss the appeal as moot.

## I. BACKGROUND

[¶ 2] Anthem Health Plans of Maine, Inc., d/b/a Anthem Blue Cross and Blue Shield, appeals from a judgment affirming a decision of the Superintendent of Insurance (1) determining that Anthem's proposed average rate increase of 18.5% applicable to its individual health insurance products, which contained a built-in projected profit and risk margin of 3%, was excessive and discriminatory, and (2) indicating that an average 10.9% rate increase containing a 0% projected profit margin would be approved. Anthem contends that, in setting a profit margin at 0%, the Superintendent's decision eliminated Anthem's opportunity to earn a "not . . . inadequate" or fair and reasonable rate of return, which, according to Anthem, must include a reasonable profit. Accordingly, Anthem maintains that the Superintendent's decision violates 24–A M.R.S. § 2736 (2010) [1] and the United States and Maine Constitutions.

---

1. The statute provides in the case of individual health insurance policies that "[e]very insurer shall file for approval by the superintendent every rate, rating formula, classification of risks and every modification of any formula or classification that it proposes to use in connection with individual health insurance policies[.]" 24–A M.R.S. § 2736(1) (2010).

[¶ 3]   Anthem filed a petition for review of final agency action in the Superior Court pursuant to M.R. Civ. P. 80C and 5 M.R.S. § 11002 (2010), requesting that the Superintendent's decision be vacated and the case remanded for approval of a rate that would include a 3% profit margin. The case was transferred to the Business and Consumer Docket.   The court found no constitutional or statutory infirmity and affirmed the Superintendent's decision. Anthem timely filed this appeal.[2]

[¶ 4]   While the case was pending, the rates for the next year, 2010, came under consideration by the Superintendent.   Anthem was granted a rate increase that includes a 0.5% profit margin.   *Anthem Blue Cross & Blue Shield 2010 Individual Rate Filing for HealthChoice, Health-Choice Standard and Basic, and Lumenos Consumer Directed Health Plan Products,* No. INS–10–1000, Decision and Order (Me. Bur. of Ins. Sept. 2, 2010).   That rate went into effect on October 1, 2010.[3]

## II.   DISCUSSION

[¶ 5]   Because the 2009 rate is no longer in effect, we must address whether the case is moot.   "An issue is deemed to be 'moot' when there is no 'real and substantial controversy, admitting of specific relief through a judgment of conclusive character.'"   *Smith v. Hannaford Bros. Co.,* 2008 ME 8, ¶ 6, 940 A.2d 1079, 1081 (quoting *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43,* 1999 ME 143, ¶ 16, 738 A.2d 1239, 1243).   "When determining whether a case is moot, we examine 'whether there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources.'" *Id.* (quoting *Lewiston Daily Sun,* 1999 ME 143, ¶ 14, 738 A.2d at 1243).

[¶ 6]   Anthem acknowledges that it cannot obtain any financial relief in this case. The rate year is over, and there exists no authority for Anthem to recover higher rates from the subscribers for that year. Nonetheless, Anthem contends that the case is not moot because the Superintendent has not acknowledged that she erred in failing to provide a profit margin.   It seeks an essentially advisory opinion from the Court to provide guidance to the Superintendent in the future.   Anthem further argues that the controversy remains live because it has challenged the 2010 rates on the same basis, even though the Superintendent allowed a 0.5% profit margin in the 2010 rates.[4]

[¶ 7]   Despite a continuing controversy over the 2010 rates, a decision in this matter involving the 2009 rates would result in no practical effect.   The Superintendent has allowed a profit margin, albeit only 0.5%, for the 2010 rate year, thus the direction that Anthem seeks from the

---

The Superintendent then reviews the filing "to determine whether such filing meets the requirements that rates not be excessive, inadequate or unfairly discriminatory[.]" *Id.* at § 2736(2). While the Superintendent did not approve Anthem's proposed 18.5% increase, she did approve an average rate increase for Anthem's individual products of 10.9% pursuant to 24-A M.R.S. § 2736–B (2010).

2.   The National Association of Insurance Commissioners and the Consumers for Affordable Health Care Coalition filed amicus curiae briefs in support of the Superintendent's deci-sion; the Maine State Chamber of Commerce filed an amicus brief in support of Anthem.

3.   Although not part of the record on appeal, the parties acknowledge the rate increase, and the Court takes judicial notice of the Superintendent's September 2, 2010, decision and order.

4.   Anthem sought and received a stay on its petition for judicial review on the 2010 rates, apparently over the Superintendent's objection, pending a decision in this appeal.

Court is not necessary for the 2010 rates.[5] Moreover, even if we were to find in Anthem's favor and vacate the Superintendent's decision, Anthem has no legal authority to retroactively collect any such increases from policyholders. Because a decision in Anthem's favor would provide it with no effective relief, the case is moot. Except in extraordinary circumstances, "[w]e will not expend limited judicial resources to review the legal correctness of a decision that will no longer affect the parties involved." *Me. Sch. Admin. Dist. No. 37 v. Pineo,* 2010 ME 11, ¶ 8, 988 A.2d 987, 991 (holding appeal of mandatory injunction requiring town selectmen to sign warrant to hold election moot after election was held, but case fit within exception to mootness doctrine); *see also Me. Civil Liberties Union v. City of So. Portland,* 1999 ME 121, ¶¶ 10–11, 734 A.2d 191, 195 (holding appeal from a summary judgment declaring process for consolidation of voting districts for a special election illegal is moot because election was long over and circumstances were not likely to recur).

■ [¶ 8] Anticipating that barrier to obtaining appellate review, Anthem contends that the Court should nevertheless decide the case because it fits within one of the exceptions to the mootness doctrine. There are three recognized exceptions to the doctrine that may justify addressing the merits of an otherwise moot appeal:

(1) sufficient collateral consequences will result from the determination of the questions presented so as to justify relief;

(2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and the public, we may address; or

(3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*Smith,* 2008 ME 8, ¶ 8, 940 A.2d at 1081.

[¶ 9] Anthem focuses on the second and third exceptions. It asserts that because rates are regularly superseded in the annual rating cycle, the issues presented here are capable of repetition, but will evade review. *See* 6 C.M.R. 02031 940–2 § 6(D) (2006) (requiring insurers to review rates annually and file rate revisions as appropriate to avoid the necessity of large rate increases). Anthem also contends that the public concern exception applies because the issue of whether individual health insurance rates set by the Superintendent must include a profit significantly affects the insurance market in the State.

[¶ 10] Although we recognize the cyclical nature of ratemaking in this context, we are not convinced that the precise issues presented in this case will recur. The Superintendent's decision itself recognizes that the 2009 rate year presented a "unique economic situation resulting in extreme financial hardship for subscribers." In addition, the 2010 rates approved by the Superintendent include a small, but nonetheless positive, profit margin.

■ [¶ 11] Regarding the question of "great public concern," even assuming that the public has a substantial interest in the rates set by the Superintendent, these are circumstances in which judicial restraint is appropriate.

[¶ 12] At the national level, following the enactment of the Patient Protection and Affordable Care Act, a shift in public policy regarding health care insurance has been discussed following the recent elec-

---

5. We express no opinion as to whether a 0.5% profit margin would be considered legally or factually adequate.

tion.[6] In Maine, a new Governor and a substantially changed Legislature have not yet had a chance to weigh in on the policy issues presented. Now in session, the Legislature could eliminate the ambiguity that has given rise to this appeal through the simple insertion of the definition of the phrase "not ... inadequate." *See, e.g.,* 24–A M.R.S. § 2382 (2010).[7]

[¶ 13] All of these events signal the potential for substantial change in the regulatory environment governing health insurance rates. Decisions on rate-setting standards and processes, along with any redesign of the mechanisms implementing public policy regarding health care, should be arrived at in the first instance by the Governor and the Maine Legislature.

[¶ 14] Given the potential for change in healthcare regulation at both the federal and State levels, the precise issues presented in this case are not "likely to recur." Nor is it in the public interest for this Court to decide, for future rate making cases, the meaning of a statute that may well be altered, amended, or eliminated in the upcoming months. In this highly regulated area of law, judicial restraint counsels us to conclude that the controversy that brought the parties to this Court is moot and that no exception to the mootness doctrine applies here.

The entry is:

Appeal dismissed.

LEVY, J., with whom MEAD, J., joins, dissenting.

[¶ 15] Although technically moot, I would permit this appeal to proceed because the issue presented falls within a recognized exception to the mootness doctrine. The core legal issues this appeal presents arise from an annual rate approval process, are likely to be repeated if not resolved, and will consistently evade review because of their "fleeting or determinate nature." *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43,* 1999 ME 143, ¶ 17,

---

**6.** On March 23, 2010, the Patient Protection and Affordable Care Act (the Act), Pub.L. No. 111–148, 124 Stat. 119 (2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub.L. No. 111–152, 124 Stat. 1029 (2010), went into effect. The Act mandates changes in both individual and group plans offered by insurers that are intended to increase access to health insurance and health care. Many of the changes will not become effective until 2014. The Act's provisions could be changed or repealed before their varying effective dates. In addition to the time delay, several lawsuits have been filed challenging the validity of certain provisions of the Act, including the insurance mandate. *See, e.g., Virginia ex rel. Cuccinelli v. Sebelius,* No. 3:10CV188–HEH (E.D. Va. filed Mar. 23, 2010); *Florida ex rel. Bondi v. U.S. Dep't of Health & Human Servs.,* No. 3:10–cv–00091–RV–EMT (N.D. Fla. filed Mar. 23, 2010); *Goudy–Bachman v. U.S. Dep't of Health & Human Servs.,* No. 1:10–CV–763, 2010 WL 3251857 (M.D. Pa. filed April 9, 2010). Maine has joined the Florida lawsuit.

Both the Eastern District of Virginia (*Hudson, J.*) and the Northern District of Florida (*Vinson, J.*) have declared the Act or parts thereof, specifically the insurance mandate, unconstitutional. *Cuccinelli,* 728 F.Supp.2d 768 (E.D.Va.2010), petition for cert. filed, —— U.S.L.W. —— (U.S. Feb. 8, 2011) (No. 10–1014); *Bondi,* —— F.Supp.2d ——, 2011 U.S. Dist. LEXIS 8822 (N.D.Fla. Jan. 31, 2011). At least two other courts have upheld the Act. *See Thomas More Law Ctr. v. Obama,* 720 F.Supp.2d 882 (E.D.Mich.2010); *Liberty Univ., Inc. v. Geithner,* 753 F.Supp.2d 611 (W.D.Va.2010).

**7.** Title 24–A M.R.S. § 2382 (2010), applicable to workers' compensation insurance, provides:

**3. Inadequate rates.** A rate is not inadequate unless insufficient to sustain projected losses and expenses and the use of the rate has had a tendency to create a monopoly or, if continued, will tend to create a monopoly in the market or will cause serious financial harm to the insurer.

738 A.2d 1239, 1243; *see also Me. Sch. Admin. Dist. No. 37 v. Pineo,* 2010 ME 11, ¶ 9, 988 A.2d 987, 991.

[¶ 16] The Superintendent's regulations require that Anthem review its claims experience no less than annually and "file rate revisions, upward or downward, as appropriate." 6 C.M.R. 02031 940–2 § 6(D) (2006). This regulatory requirement results in a yearly cycle of rate proceedings before the Superintendent. An annual process for approving rates necessarily produces an administrative decision that is fleeting. The majority opinion nonetheless concludes that the exception to mootness for decisions that are capable of repetition and will evade review does not apply because it is "not convinced that the precise issues presented in this case will recur." This misses the point.

[¶ 17] The issue presented for decision is not simply whether the Superintendent was correct in setting a 0% profit margin for 2009, but more broadly, whether, pursuant to 24–A M.R.S. § 2736(2) (2010), rates that are "not . . . inadequate" must include a reasonable return, including a reasonable profit. In her decision setting 2009 rates, the Superintendent treated the adequacy requirement as a solvency standard designed to assure that insurance rates are sufficient to cover claims and losses. Anthem contends that the Superintendent applied the same interpretation in deciding the 2010 rate case. This is far different from analyzing rates based on the principle that insurers are entitled to receive a reasonable rate of return, including a reasonable profit. Solvency and profit are not synonymous.

[¶ 18] Whether a rate is "not . . . inadequate" for purposes of section 2736(2) if it assures nothing more than the insurer's solvency is an important question of law that will continue to present itself unless the Superintendent abandons her current interpretation of the statute. Notwithstanding the changing political tides alluded to in the majority opinion, the Superintendent has not abandoned or modified her interpretation of the statute. I thus conclude that we should reach and decide the merits.