2010 ME 11

**MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 37**

**v.**

**Vance PINEO et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 14, 2010.

Decided: Feb. 18, 2010.

Marc N. Frenette, Esq. (orally), Skelton, Taintor & Abbott, Auburn, ME, for Vance Pineo and Arthur Tatangelo.

Jerrol A. Crouter, Esq. (orally), Brianne M. Martin, Esq., Drummond Woodsum, Portland, ME, for Maine School Administrative District No. 37.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN,* and JABAR, JJ.

GORMAN, J.

[¶ 1]   Vance Pineo and Arthur Tatangelo, Selectmen in the Towns of Columbia Falls and Cherryfield, respectively, appeal from a judgment entered in the Superior Court (Washington County, *Cuddy, J.*) that denied their motion to stay execution of a preliminary injunction.  That injunction ordered them and the other selectmen

---

* Although not available at oral argument, Justice Gorman participated in and authored this decision.  *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

of each town to countersign and post warrants and notices of election regarding the closing of the Columbia Falls and Cherryfield elementary schools within Maine School Administrative District No. 37 (MSAD 37). Pineo and Tatangelo contend that the court erred both in granting the injunction and denying their motion because they contend that municipal officers have the discretion to refuse to sign a warrant they believe is legally deficient. Specifically, they assert that the warrants were legally deficient because the vote of MSAD 37's Board of Directors to close the elementary schools did not comply with the two-thirds supermajority requirement of 20–A M.R.S. § 1511 (2009). We disagree, and affirm the judgment.

## I. BACKGROUND

[¶ 2] Three years ago, the Legislature enacted several statutes intended to reorganize and consolidate school systems throughout the state. *See* 20–A M.R.S. §§ 1451–1512 (2009); P.L. 2007, ch. 240, §§ XXXX–1 to XXXX–48 (effective June 7, 2007).[1] By virtue of those laws, many of the school governance bodies known as school administrative districts were to consolidate and reorganize themselves into regional school units by July 1, 2009. *See* P.L. 2007, ch. 240, § XXXX–36(12). The events giving rise to this case occurred in the months preceding that deadline. During that period of time, MSAD 37 was still extant and functioning as a school administrative district.

[¶ 3] On March 16, 2009, the Board of Directors for MSAD 37 (the Board) voted to close the Columbia Falls and Cherryfield Elementary Schools effective June 30, 2009, pursuant to 20–A M.R.S. § 4102(3) (2009).[2] On April 8, 2009, in order to comply with 20–A M.R.S. § 4102(4)(A),[3] which requires voter approval before closing an elementary school, the Board approved warrants and notices of election calling for a referendum to occur on May 12, 2009, pursuant to 20–A M.R.S. § 1352 (2009).[4] On April 10, 2009, the Board de-

---

1. The school reorganization and consolidation laws have already been amended numerous times. See, e.g., P.L. 2009, ch. 107 (effective May 8, 2009); P.L. 2007, ch. 668 (effective July 18, 2008); P.L. 2007, ch. 599 (effective April 11, 2008).

2. Title 20–A M.R.S. § 4102(3) (2009) allows the "closing of a school building by a school administrative unit" when the "building has been deemed to be unnecessary or unprofitable to maintain by the governing body of the administrative unit." The Board voted in favor of closing the elementary schools by a vote of 600 to 401.

3. Title 20–A M.R.S. § 4102(4)(A) (2009) states that "elementary schools in administrative districts and community school districts may only be closed if approved by the voters in accordance with the procedures set out in section 1512...."

4. Title 20–A M.R.S. § 1352 (2009) sets forth the method of calling a district referendum by a school board, and provides:

A district referendum shall be initiated by a warrant prepared and signed by a majority of the board of directors. The warrant *shall* be countersigned by the municipal officers in the municipality where the warrants are posted.

1. **Municipal officers.** The warrant shall direct the municipal officers to call a referendum on a date and time determined by the board of directors.

. . . .

**B.** The warrant shall be served on the municipal clerk of each of the municipalities within the district by delivering an attested copy of the warrant in hand within 3 days of the date of the warrant. The municipal clerk, on receipt of the warrant, shall immediately notify the municipal officers within the municipality. The municipal officers *shall* forthwith meet, countersign and have the warrant posted.

(Emphasis added.) The Board voted to approve the warrants by a vote of 559 to 386; a majority of the Board members then signed the warrants.

livered the warrants and notices of election to the Town Clerks of both Columbia Falls and Cherryfield, so the municipal officers could then "countersign and have the warrant[s] posted." 20–AM.R.S. § 1352(1)(B).

[¶ 4] At the end of April, however, neither town's selectmen had signed or posted the warrants. The selectmen believed that the Board's vote to close the elementary schools was deficient because it did not conform to the new two-thirds supermajority requirement of 20–A M.R.S. § 1511 applicable to regional school units.[5] After failing to receive requested assurances that the selectmen would countersign and post the warrants so that the elections could go forward, MSAD 37 sought to judicially compel them to comply through an M.R. Civ. P. 80B mandamus action. MSAD 37 filed a verified complaint against the selectmen of Columbia Falls and Cherryfield in the Washington County Superior Court on Friday, May 1, 2009, seeking temporary and permanent injunctive relief to compel the selectmen to countersign and post the warrants.[6]

[¶ 5] After rejecting the selectmen's argument that MSAD 37 was a regional school unit and that the Board had to comply with 20–A M.R.S. § 1511, the court granted the preliminary injunction on Monday, May 4, 2009, and ordered the selectmen to countersign the warrants and post the notice of election by May 5, 2009. Citing our decision in *Casco Northern Bank v. Board of Trustees of Van Buren Hospital District*, 601 A.2d 1085, 1087 (Me.

1992), the court concluded that MSAD 37 had met its burden of proof for the injunction because the signing of the warrants was a ministerial act and the selectmen were therefore without discretion to refuse to comply with 20–A M.R.S. § 1352.

[¶ 6] On May 5, 2009, a majority of the selectmen in each town complied with the court's order by signing and posting the warrants. Only Pineo and Tatangelo moved for reconsideration and a stay of execution of the injunction, which the court denied. Pineo and Tatangelo then filed this timely appeal pursuant to 14 M.R.S. § 1851 (2009) and M.R.App. P. 2.

[¶ 7] The elections took place on May 12, 2009; the voters of Columbia Falls approved the closing of their town's elementary school, but the Cherryfield voters did not.

## II. DISCUSSION

### A. Mootness

[¶ 8] Because the disputed elections have already occurred, and the Columbia Falls Elementary School is now closed, we first address the issue of mootness. When the "passage of time and the occurrence of events deprive the litigant of an ongoing stake in the controversy," the case is no longer justiciable. *Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 6, 802 A.2d 994, 996 (quotation marks omitted); *see also Roop v. City of Belfast*, 2008 ME 103, ¶¶ 2–3, 953 A.2d 374, 375 (per curiam) (dismissing an appeal as

---

5. Title 20–A M.R.S. § 1511 (2009) provides that "[a] school operated within the regional school unit may not be closed unless closure of the school is approved at a regular or special meeting of the regional school unit board by an affirmative vote of 2/3 of the elected membership or voting power of the regional school unit board."

6. Pineo and Tatangelo, along with the Towns of Columbia Falls and Cherryfield and a par-

ent of a child at each town's elementary school, separately filed an M.R. Civ. P. 80B verified complaint against MSAD 37 on May 10, 2009, seeking equitable and declaratory relief to prevent the referenda and, if necessary, invalidation of the elections to prevent the elementary schools from closing. The court denied their motion for temporary and permanent injunctive relief and consolidated the two cases on May 28, 2009.

moot when the subject of the case ceased to exist during the pendency of the appeal). We will not expend limited judicial resources to review the legal correctness of a decision that will no longer affect the parties involved. *See Halfway House, Inc. v. City of Portland,* 670 A.2d 1377, 1380 (Me.1996). We do not have the authority to "undo" an election or to reopen a school, and thus this appeal is technically moot.

■ [¶ 9] Although technically moot, we may still address an issue on appeal if it falls within one of the three narrow exceptions to the mootness doctrine:

(1) sufficient collateral consequences will result from the determination of the questions presented so as to justify relief; (2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public, the court may address; or (3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*Me. Civil Liberties Union v. City of S. Portland,* 1999 ME 121, ¶ 9, 734 A.2d 191, 195 (quotation marks and alteration omitted). Pineo and Tatangelo concede that their appeal is technically moot, but assert that the case comes under the second and third exceptions to the mootness doctrine: they claim the case presents questions of great public interest and issues capable of repetition but evading review. When determining whether a case falls within the great public interest exception, we consider "whether the question is public or private, how much court officials need an authoritative determination for future rulings, and how likely the question is to recur in the future." *Young v. Young,* 2002 ME 167, ¶ 9, 810 A.2d 418, 422 (quotation marks omitted). An appeal will also escape dismissal for mootness when the circumstances are likely to repeat themselves, but will consistently evade judicial review because of a truncated timeline.

*See Me. Civil Liberties Union,* 1999 ME 121, ¶¶ 10–11, 734 A.2d at 195, We have applied this exception in "election disputes that remain in court after the disputed election" when there is a reasonable likelihood the issue will reoccur in the future. *See Fredette v. Sec'y of State,* 1997 ME 105, ¶ 4, 693 A.2d 1146, 1147.

■ [¶ 10] The specific circumstances of this case, which occurred just before the July 1, 2009, deadline for reorganization and consolidation pursuant to chapter 103–A of title 20–A, *see* P.L. 2007, ch. 240, § XXXX–36(12) (stating that "the school administrative district must be recreated as a regional school unit under Title 20–A, chapter 103–A, effective July 1, 2009"), are unique and unlikely to reoccur. The broader issue presented, however, is one that may occur again: whether municipal officers have the discretion to refuse to sign a warrant they believe is legally deficient. That issue is of great public interest and would consistently evade review because of the truncated timeline between the signing of a warrant and the election. *Fredette,* 1997 ME 105, ¶ 4, 693 A.2d at 1147; *King Res. Co. v. Envtl. Improvement Comm'n,* 270 A.2d 863, 870 (Me. 1970); *see Anderson v. Town of Durham,* 2006 ME 39, ¶ 64, 895 A.2d 944, 962 (Levy, J., concurring) (indicating an issue may fall under more than one exception to the mootness doctrine).

[¶ 11] The appeal thus presents a justiciable controversy, and we address the merits of Pineo's and Tatangelo's arguments.

B. Applicability of Supermajority Requirement of 20–A M.R.S. § 1511 to the Actions of the District

■ [¶ 12] Pineo and Tatangelo contend that 20–A M.R.S. § 1511, which provides that "[a] school operated within the *regional school unit* may not be closed

unless closure of the school is approved at a regular or special meeting of the regional school unit board by an affirmative vote of 2/3 of the elected membership or voting power of the regional school unit board" (emphasis added), is applicable to the closing of an elementary school within a school administrative district. We disagree. On its face, section 1511 only applies to the closing of schools operating within a regional school unit. The trial court correctly rejected the selectmen's argument that MSAD 37 was a regional school unit subject to section 1511, and, at oral argument, Pineo and Tatangelo conceded that MSAD 37 was not a regional school unit at the time of the injunction.

[¶ 13] Despite the plain language of the statute and that concession, however, Pineo and Tatangelo assert that the supermajority requirement of section 1511 applies to the Board's votes to close these schools through 20–A M.R.S. § 4102. They argue that 20–A M.R.S. § 4102(4)(A), which directs school administrative districts to follow the voter approval referendum procedures laid out in 20–A M.R.S. § 1512,[7] should also be read to require the districts' boards to comply with section 1511 in their decision-making process. See P.L. 2007, ch. 599, § 1 (effective June 7, 2007) (directing school administrative districts seeking to close an elementary school to follow the same school closing referendum procedures of section 1512 that apply to regional school units).

[¶ 14] This interpretation of the statute, however, ignores its plain language and conflates the vote of the citizens with the vote of the board. See *Windham Land Trust v. Jeffords,* 2009 ME 29, ¶ 12, 967 A.2d 690, 695. Title 20–A M.R.S. § 4102(4) states: "Before a school board may close a school building pursuant to

subsection 3, *voter approval* shall be obtained as follows." (Emphasis added.) Subsection (4)(A), which applies to the closing of elementary schools, permits such closings only if they have been *"approved by the voters* in accordance with the procedures set out in section 1512." 20–A M.R.S. § 4102(4)(A) (emphasis added). Title 20–A M.R.S. § 1512(1), in turn, references the "referendum procedures set forth in [chapter 103–A]." Those referendum procedures are found in chapter 103–A at sections 1501, 1502, and 1503. *See* 20–A M.R.S. §§ 1501–1503. Although 20–A M.R.S. § 1511 is also contained within chapter 103–A, it does not refer to or discuss referendum procedures; instead it discusses the step that precedes the referendum procedure, i.e., it mandates the level of agreement that must be reached by the board of the regional school unit before a referendum process may be initiated. Thus, Pineo's and Tatangelo's argument that language of 20–A M.R.S. § 4102 regarding the voting procedures for the public referendum affects the voting procedures of the District's Board is contrary to the plain language of the statute. *See Windham Land Trust,* 2009 ME 29, ¶ 12, 967 A.2d at 695.

[¶ 15] Because 20–A M.R.S. § 4102 directs compliance only with section 1512, which references the procedures necessary to obtain voter approval of a proposed school closure, and does not refer to section 1511, before July 1, 2009, school administrative districts continued to be governed by the statutory section regarding referenda and warrants that expressly applied to them, 20–A M.R.S. § 1352. Pursuant to that section, a district referendum "shall be initiated by a warrant prepared and signed by a majority of the board of

7. Title 20–A M.R.S. § 1512 (2009) outlines the referendum procedures and also provides that a municipality that votes to keep a school

open despite the board's recommendation that it be closed will bear the costs that would have been saved if the school were closed.

directors" of the school administrative district. 20–A M.R.S. § 1352. The referenda at issue here were initiated by warrants prepared and signed by a majority of the Board of Directors of MSAD 37 in April of 2009 and were therefore valid.

## C. Discretion of Municipal Authorities to Comply with 20–A M.R.S. § 1352

■ [¶ 16] Finally, Pineo and Tatangelo contend that the referendum procedures in 20–A M.R.S. § 1352 comprise a discretionary function of municipal authorities and not a mandatory duty. We review questions of statutory interpretation de novo, and when construing statutes we first look to the statute's plain meaning. *Morrill v. Me. Tpk. Auth.*, 2009 ME 116, ¶ 5, 983 A.2d 1065, 1067; *Windham Land Trust*, 2009 ME 29, ¶ 12, 967 A.2d at 695.

■ [¶ 17] Pineo and Tatangelo contend that the referendum procedures in section 1352, although "seemingly mandatory" on municipal authorities, must be read in conjunction with 20–A M.R.S. § 1511. They maintain that a referendum warrant that fails to comply with this section allows the selectmen to exercise discretion in deciding whether to countersign the warrant, and that our decision in *Dunston v. Town of York*, 590 A.2d 526 (Me. 1991), supports this conclusion. As previously discussed, section 1511 did not apply to the Board's vote to close the Columbia Falls and Cherryfield elementary schools. As this is the sole deficiency in the process that Pineo and Tatangelo allege, we therefore address only whether section 1352 is a mandatory duty or a discretionary function of municipal authorities.[8]

[¶ 18] When a district referendum has been properly "initiated by a warrant prepared and signed by a majority of the board of directors," 20–A M.R.S. § 1352 requires that "[t]he warrant *shall* be countersigned by the municipal officers in the municipality where the warrants are posted." (Emphasis added.) We have consistently held that "the word shall is to be construed as must," and that such statutory language indicates a mandatory duty for the "purpose of sustaining or enforcing an existing right." *See Casco N. Bank*, 601 A.2d at 1087–88 (citing *Rogers v. Brown*, 135 Me. 117, 118–19, 190 A. 632, 633 (1937) (quotation marks omitted)).

> When the law requires a public officer to do a specified act, in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial in character and performance may be compelled by mandamus. . . .

*Young v. Johnson*, 161 Me. 64, 70, 207 A.2d 392, 395 (1965) (quotation marks omitted). Because 20–A M.R.S. § 1352 requires the selectmen to meet, countersign, and post the warrants, and does not afford them any discretion or offer an alternative procedure, the selectmen of each town had a mandatory duty to comply with the statute. *See Casco N. Bank*, 601 A.2d at 1087–88.

[¶ 19] Pineo's and Tatangelo's reliance on *Dunston* as a source of discretion within the statutory scheme is misplaced. In *Dunston*, we held that a provision containing the procedure for calling a town meeting, *see* 30–A M.R.S. § 2522 (2009) (stating

---

8. Pineo and Tatangelo also contend that a warrant that does not meet the statutory requirements would afford the selectmen the discretion to refuse to countersign and post the warrants. For example, they allege the selectmen would have had the discretion to refuse to act on a warrant that failed to speci-

fy the additional cost the municipality must bear should the voters opt to keep the school open, as required by 20–A M.R.S. § 1512(1). We do not address this argument, however, because we have not been presented with the issue of an unperfected warrant.

that "the municipal officers shall either insert a particular article in the next warrant issued or shall within 60 days call a special town meeting for its consideration"), was not mandatory because 30–A M.R.S. § 2521(4) (2009) provided an alternative method for calling a town meeting when the municipal officers unreasonably refused to do so. *Dunston*, 590 A.2d at 527. We concluded that the combination of the standard and alternative methods "recogniz[ed] the authority of the selectmen to exercise their sound discretion" in determining whether the warrant petition complied with the statute. *Id.* No such discretion exists in this case because there is no method for calling a referendum other than the one outlined in 20–A M.R.S. § 1352. Pineo's and Tatangelo's remaining arguments are without merit and we decline to address them.

## III. CONCLUSION

[¶ 20] The trial court correctly concluded that at the time the injunction was requested, section 1511 did not apply to MSAD 37 because it was not a regional school unit. Upon receipt of the warrants signed by a majority of the Board, the selectmen of Columbia Falls and Cherryfield were required to countersign and post the warrants because 20–A M.R.S. § 1352 imposes a mandatory duty. *See Casco N. Bank*, 601 A.2d at 1087–88. Neither the statutory language of section 1352 nor the statutory scheme of chapter 103–A afforded the selectmen the discretion to refuse to sign the warrant.

[¶ 21] The trial court therefore properly compelled the selectmen to comply with their statutory obligations through the M.R. Civ. P. 80B mandamus. *See Portland Sand & Gravel, Inc. v. Town of Gray*, 663 A.2d 41, 43–44 (Me.1995) (holding that the procedures under M.R. Civ. P. 80B can take the form of a mandamus to compel the mandatory, nondiscretionary acts of local authorities).

The entry is:

Judgment affirmed.