STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-12-33

*AMH -CUM- 10/15/2012*

CENTRAL DISTRIBUTORS, INC.,           )
                                      )
                Plaintiff,            )
                                      )
        v.                            )
                                      )
LABATT USA OPERATING                  )
COMPANY, LLC, d/b/a LABATT USA,       )
d/b/a NORTH AMERICAN                  )
BREWERIES                             )
                                      )
                Defendant             )
                                      )

## ORDER ON LABATT'S MOTION TO COMPEL ARBITRATION
## AND MOTION TO DISMISS

Plaintiff Central Distributors, Inc. (Central) initiated this action on April 25, 2012, by filing a five-count complaint in Androscoggin Superior Court alleging: 1) violations of the Certificate of Approval Holder and Maine Wholesale Licensee Agreement Act, 28-A M.R.S. §§ 1451-65 (2011) (the "Wholesale Act"), against Defendants Labatt USA Operating Company, LLC (d/b/a Labatt USA d/b/a North American Breweries) (Labatt) and Pine State Trading Co. (Pine State); 2) tortious interference with advantageous economic relationship against Pine State; 3) breach of contract against Labatt; 4) negligence against Labatt; and 5) violation of the Monopolies and Profiteering Act, 10 M.R.S. §§ 1101-1110 (2011) (the "Antitrust Act"), against both Labatt and Pine State.

On August 1, 2012, the court held oral argument on three pending motions: 1) Labatt's motion to compel statutory arbitration pursuant to 28-A M.R.S. § 1457; 2) Pine State's motion to dismiss Counts II and V; and 3) Labatt's motion to dismiss Counts I, IV, and V. At oral argument, the parties represented that Central had settled its claims with Pine State and that no action need be

1

taken on Pine State's motion. The court later entered a consented-to order dismissing all claims by Central against Pine State with prejudice.[1]

## FACTUAL BACKGROUND

Labatt is a registered certificate of approval holder with the Maine Bureau of Liquor Enforcement. *See* 28-A M.R.S. §§ 2(8), 1351-71 (2011). (Compl. ¶ 5.) Until 2011, Central was Labatt's wholesale licensee for Labatt brands in Maine. *See* 28-A M.R.S. § 2(34) (2011). (Compl. ¶ 6.) In the fall of 2010, Central refused to provide Labatt with its pricing and profits on the Labatt Brand on grounds it was price-fixing, prohibited by 28-A M.R.S. § 1459. (Compl. ¶ 10.) After refusing the same request a second time, Labatt informed Central it decided to make Pine State its new distributor and asked Central to sell its brands to Pine State. (Compl. ¶¶ 11-14.) Central refused. (Compl. ¶ 15.)

On or about April 18, 2011, Labatt wrote Central and terminated Central's right to distribute Labatt brands effective July 17, 2011. (Compl. ¶ 16.) In the same letter, Labatt offered Central 3.9 times Central's gross profits as the "reasonable compensation" required by 28-A M.R.S. § 1457, which Central rejected. (Compl. ¶¶ 17-18.) Presently, Labatt no longer supplies its brands to Central, and Pine State is now distributing the Labatt brands. (Compl. ¶ 35.)

## DISCUSSION

I.     Motion to Compel Statutory Arbitration

Pursuant to 28-A M.R.S. § 1457, Labatt moves to compel arbitration on the "reasonable compensation for the value of [Central's] business related to the terminated brand or brands." The reasonable compensation portion, including the arbitration provision, of the Wholesale Act provides in full:

### § 1457. Compensation

---

[1] Pine State accordingly has been removed from the case caption. *See* M.R. Civ. P. 17(a).

2

**1.     Reasonable compensation.**   Any certificate of approval holder which amends, cancels, terminates or refuses to continue or renew any agreement, or causes a wholesale licensee to resign, unless for good cause shown, as defined in section 1454, from an agreement or unreasonably withholds consent to any assignment, transfer or sale of a wholesale licensee's business, shall pay the wholesale licensee reasonable compensation for the value of the wholesale licensee's business related to the terminated brand or brands.   The value of the wholesale licensee's business includes inventory and other tangible assets and its good will.

**2.     Neutral arbitrator.**   If the certificate of approval holder and the wholesale licensee are unable to agree on the reasonable compensation to be paid for the value of the wholesale licensee's business, as defined in subsection 1, they *shall* submit the matter to a neutral arbitrator selected by the parties, or, if they cannot agree, by the Chief Justice of the Supreme Judicial Court.   The costs of the arbitration shall be paid 1/2 by the wholesale licensee and 1/2 by the certificate of approval holder or otherwise the arbitration proceeding shall be governed by the Maine Uniform Arbitration Act.

28-A M.R.S. § 1457 (emphasis added).   The Law Court has interpreted a prior version section 1457(1) only to permit reasonable compensation to the wholesaler if the termination is not for good cause.   *E. of Me., Inc. v. Vintners Group Ltd.*, 455 A.2d 936, 945 (Me. 1983) (*Eastern I*); *accord Solman Distribs., Inc. v. Brown-Forman Corp.*, 888 F.2d 170, 173 (1st Cir. 1989); *see also E. of Me., Inc. v. Vintners Group Ltd.*, 495 A.2d 318, 320-21 (Me. 1985) (*Eastern II*) (noting that on remand from *Eastern I*, the court determined whether there was good cause before the wholesaler could pursue the relief of reasonable compensation).

There is no dispute that Labatt terminated its agreement with Central, in that it has stopped supplying Central with its brands.   (Compl. ¶ 35; Labatt Answer ¶ 35.)   Labatt offered to pay 3.9 times Central's gross profit for the relevant brands over the trailing 12 months.   (Compl. ¶ 17.) Central rejected the offer, instead suggesting an 8.8 multiplier for Central's 2008 gross profits. (Compl. ¶ 30.)   The parties clearly dispute the value of reasonable compensation.   Further, Labatt does not assert it had good cause to terminate the agreement.

3

Labatt argues that arbitration pursuant to section 1457 is mandatory upon a disagreement between the certificate holder and the wholesaler upon the value of reasonable compensation, pointing to sub-section 2, which states "shall."[2]

The court agrees. The statute clearly requires Central and Labatt to arbitrate the amount of reasonable compensation owed to Central for termination of their agreement. Section 1457(2) provides that the arbitration of reasonable compensation is subject to the Maine Uniform Arbitration Act (MUAA), 14 M.R.S. §§ 5927-49 (2011). Section 5928(4) of MUAA affords the court discretion to not stay the balance of a pending matter if the issue subject to arbitration is severable. Labatt's motion does not seek a stay of the balance of the case, and the court agrees with Central that a stay is not necessary. *See Cent. Distribs., Inc. v. Anheuser-Busch, Inc.*, ANDSC-CV-2001-125, at 4 (Me. Super. Ct., And. Cty., Apr. 29, 2008) (Wheeler, J.) (ordering the parties to arbitrate reasonable compensation pursuant to 28-A M.R.S. § 1457, but not staying the balance of the dispute). The court thus concludes that the parties must arbitrate the value of reasonable compensation, but declines to stay the balance of the case.

II.     Motion to Dismiss

Labatt moves to dismiss, pursuant to M.R. Civ. P. 12(b)(6), Counts I, IV, and V of Central's complaint. A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). When reviewing a motion to dismiss, this court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges

---

[2] Labatt cites 1 M.R.S. § 71(9-A) (2011), which provides that in construction of Maine statutes, "'shall' and 'must' are terms of equal weight that indicate a mandatory duty, action or requirement," but that provision only applies to "laws enacted or language changed by amendment after December 1, 1989." The use of "shall" in section 1457(2) predates 1989. Nevertheless, the Law Court has consistently held that the word "shall" should be construed as "must" for the purpose of sustaining or enforcing an existing right. *Me. Sch. Admin. Dist. No. 37 v. Pineo*, 2010 ME 11, ¶ 18, 988 A.2d 987; *Rogers v. Brown*, 135 Me. 117, 118-19, 190 A. 632, 633 (1937) (citing *W. Wis. Rwy. Co. v. Foley*, 94 U.S. 100, 103 (1877)).

4

facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal under M.R. Civ. P. 12(b)(6) will be granted only "when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Id.* (quotation marks omitted).

In addition, each claim in a pleading must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." M.R. Civ. P. 8(a). "Where a Maine Rule of Civil Procedure is identical to the comparable federal rule, '[the courts] value constructions and comments on the federal rule as aids in construing our parallel provision.'" *Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676, 680 (quoting *Me. Cent. R.R. Co. v. Bangor & Aroostook R.R. Co.*, 395 A.2d 1107, 1114 (Me. 1978)) (emphasis added in *Bean*). Rule 8(a) is "practically identical to the comparable federal rule[]." *Id.*

Pleadings do not need to allege specific facts to survive a 12(b)(6) motion to dismiss unless required to do so by Rule 9(b).[3] However, the United States Supreme Court has instructed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).

A.    Count I: Violations of the Wholesale Act

In Count I, Central asserts numerous violations of the Wholesale Act: section 1452 for coercion to do an illegal act (*see* Compl. ¶¶ 8(b), 9-10, 38(a)); section 1454 for termination of the agreement without good cause (*see* Compl. ¶¶ 27, 38(b)); section 1455 for inadequate notice of termination (*see* Compl. ¶¶ 16, 20-21, 38(c)); section 1457 for failure to offer reasonable compensation for the brands (*see* Compl. ¶¶ 17-18, 38(d)); and section 1460 for retaliation

---

[3] M.R. Civ. P. 9(b) commands that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

(*see* Compl. ¶¶ 11, 38(e)). Labatt asserts that Central has failed to state a claim upon which relief can be granted on each alleged violation, in part because it asserts Central has not presented any facts to support the allegations, only conclusory statements.

### 1.    *Section 1452*

"No certificate of approval holder may . . . [i]nduce or coerce, or attempt to induce or coerce, any wholesale licensee to do any illegal act or thing by threatening to amend, cancel, terminate or refuse to renew any agreement existing between a certificate of approval holder and a wholesale licensee." 28-A M.R.S. § 1452(1)(B).   In its complaint, Central asserts the illegal act in question is Labatt requesting profit and pricing information, which Central characterizes as an attempt to induce it to fix its product prices in contravention of 28-A M.R.S. § 1459.   (Compl. ¶¶ 9-10, 38(a).)  Although Central does not directly allege that Labatt threatened to alter or end their agreement if Central did not provide the requested information, Central does state that after Central refused to provide the pricing information, Labatt decided to make Pine State its distributor. (Compl. ¶¶ 10-11.)  The court views this as sufficient to show that Central may be entitled to relief on this statutory violation should it prove a causal connection between the two events.

### 2.    *Section 1454*

Pursuant to 28-A M.R.S. § 1454, "no certificate of approval holder may amend, cancel, terminate or refuse to continue or renew any agreement, or cause a wholesale licensee to resign from an agreement, unless good cause can be established or proven for amendment, termination, cancellation, nonrenewal, noncontinuation or causing a resignation."  Labatt is not arguing it had good cause for terminating the agreement with Central.  Rather, Labatt argues that arbitration in section 1457 is an exclusive remedy for termination without good cause and Central cannot proceed on a claim for damages for the same violation.  The court disagrees.

Section 1457 mandates the arbitration of reasonable compensation only for conduct prohibited under section 1454 and 1456. Section 1458, however, provides a cause of action for *any* conduct prohibited by the Wholesale Act, not just those to which section 1457 does not apply. The Law Court stated exactly this in *Eastern I*:

> The conduct prohibited in sections [1454] and [1456] provide[s] a basis for awarding equitable relief. Significantly, . . . the conduct proscribed by these two sections [also] provides a basis for recovery of actual damages, punitive damages, costs, and attorneys fees under section [1457] *and* of reasonable compensation, as determined by arbitration, for the value of the wholesaler's business under section [1458].

455 A.2d at 942 (emphasis added).[4] Based on this language, and that the Wholesale Act does not state that section 1457 mandatory arbitration is an exclusive remedy, Central may maintain a cause of action against Labatt for violation of section 1454 and simultaneously arbitrate the value of reasonable compensation.

3. *Section 1455*

Before a certificate holder may terminate or amend an agreement with the wholesaler, the certificate holder must comply with the notice provision of 28-A M.R.S. § 1455, which includes giving the wholesaler a "reasonable time to correct the claimed deficiency or deficiencies." In full, section 1455 provides:

> **1. Written notice.** Before any termination procedure initiated by the certificate of approval holder, the certificate of approval holder shall give the wholesale licensee written notice of any claimed deficiency existing in his territory and shall give the wholesale licensee reasonable time to correct the claimed deficiency or deficiencies. After this reasonable time has elapsed, the certificate of approval holder shall provide the wholesale licensee at least 90 days prior written notice of any intent to amend, terminate, cancel or not renew any agreement. The notice must state all the reasons for the intended amendment, termination, cancellation or nonrenewal. The notice provisions of this section do not apply if the reason for the amendment, termination, cancellation or nonrenewal is:
>
> **A.** The bankruptcy or insolvency of the wholesale licensee;

---

[4] In *Eastern I*, the Law Court interpreted the prior version of the Wholesale Act, 28 M.R.S.A. §§ 665-79 (Supp. 1986), which was repealed and recodified at 28-A M.R.S.A. §§ 1451-65 (Supp. 1987). *See* P.L. 1987, ch. 45, §§ A, 3-4 (effective Sept. 29, 1989). The substance of the provisions cited in *Eastern I*, however, have not changed.

7

**B.** An assignment for the benefit of creditors or similar disposition of the assets of the wholesale licensee's business;

**C.** Revocation of the wholesale licensee's license; or

**D.** Conviction or a plea of guilty or no contest to a charge of violating a law relating to the business that materially affects the wholesale licensee's ability to remain in business.

28-A M.R.S. § 1455. Labatt does not assert that any of the exceptions to the notice provision apply in this case.

Labatt argues that because it was not attempting to terminate for good cause, but terminating based on payment of "reasonable compensation," there is nothing for Central to cure. Thus, Labatt contends that section 1455 does not apply and it did not need to comply with the time requirements or opportunity to cure. On its face, however, Section 1455 applies to any termination, not merely terminations that purport to be based on good cause. For purposes of Rule 12(b)(6), the complaint states a claim, although whether Central is entitled to any meaningful relief is not clear.

4. *Section 1457*

Central asserts that because Labatt failed to offer reasonable compensation to it upon termination of its agreement, Labatt violated section 1457. On this point, the court disagrees. As noted, section 1457 furnishes a remedy for a wholesale licensee whose agreement has been terminated or amended without good cause. It requires that the certificate holder offer reasonable compensation, and if the parties cannot agree on reasonable compensation, the parties must arbitrate the value of reasonable compensation. Central's recourse for Labatt's failure to offer what Central deems reasonable compensation is arbitration to determine the value of reasonable compensation. Central's dissatisfaction with Labatt's offer of compensation does not give rise to any new cause of action under Section 1458 or any other remedy beyond the arbitration process defined in Section 1457. *See Eastern I*, 455 A.2d at 941-42 (characterizing former section 1457 as a remedy).

8

5.    *Section 1460*

Section 1460 prohibits a certificate holder from taking retaliatory action against a licensee "who files or indicates an intention to file a complaint of alleged violation of state or federal law or regulation by the certificate of approval holder with the appropriate state or federal regulatory authority." 28-A M.R.S. § 1460(1). Labatt contends that the only alleged retaliatory act occurred after Labatt notified Central of its intent to terminate, and thus cannot be retaliatory at all. The complaint alleges that, after Central refused to provide Labatt with its gross profits on ground that it was illegal price-fixing, *see* 28-A M.R.S. § 1459, Labatt chose Pine State as its new distributor for the Labatt brands. Although this could be retaliation in a general sense, it is not the type of act that is protected by the statute. The statute only prohibits retaliatory conduct when a licensee reports or indicates an intent to report the certificate holder to a state or federal authority. There is no allegation in the complaint that Central ever reported Labatt, or indicated an intent to report Labatt, to any state or federal agency.

B.    Count IV: Negligence

"A negligence action has four elements: a duty owed, a breach of that duty, an injury, and a finding that the breach of duty was a proximate cause of the injury." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 8, 43 A.3d 948. Whether or not a duty of care exists is a question of law. *See Estate of Cilley v. Lane*, 2009 ME 133, ¶ 9, 985 A.2d 481. Central asserts in its complaint that Labatt owed it a "duty to exercise reasonable care in providing [Central] with product and market support, among other things." (Compl. ¶ 50.) The court is not aware of any case that has recognized an independent duty of care in the context of a contractual relationship such as that between Central and Labatt. Accordingly, Central has failed to state a claim for negligence.

9

C.    Count V: Violation of the Antitrust Act

In Count V, Central asserts that Labatt and Pine State "conspired to divest [Central] of [Labatt's] brands and to transfer them to Pine State" and "[t]hese concerted actions unreasonably restrained trade and produced anti-competitive effects within the relevant Maine malt liquor franchise market," "weakening the competition among wholesalers for beer distribution rights and devaluing the malt liquor franchise market." (Compl. ¶¶ 55-56.)

Maine looks to federal antitrust law in construing its antitrust statutes. *See McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 19, 977 A.2d 420. Antitrust laws are enacted for "the protection of *competition*, not *competitors*." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (U.S. 1977) (quotation marks omitted). An antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* at 489. Central has alleged no facts as to how the competition among wholesalers has been weakened or affected. The gist of this claim is really a restatement of a breach of contract action. Because Central has pled no more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp.*, 550 U.S. at 555, the complaint fails to state a claim for antitrust statute violations. Nevertheless, the Court will dismiss this count without prejudice to permit Central to amend its complaint, provided it can develop actual evidence of anticompetitive effects in the market.

**CONCLUSION**

Based upon the foregoing, the court orders as follows:

1.    Labatt's motion to compel pursuant to 28-A M.R.S. § 1457 is GRANTED. The court orders the parties to arbitrate the value of reasonable compensation consistent with the procedures in 28-A M.R.S. § 1457(2). The court declines to stay this case pending completion of the arbitration, because Central's other claims are discrete and severable. *See* 14 M.R.S. § 5928(4). Within 30 days of the date of this order, the parties shall confer and select a neutral arbitrator. *See* 28-A M.R.S. § 1457(2).

10

2.    Labatt's motion to dismiss is:

    a.    GRANTED as to Count IV;

    b.    GRANTED as to Count V without prejudice;

    c.    GRANTED as to allegations related to violations of 28-A M.R.S. § 1457 and 28-A M.R.S. § 1460 in Count I; and

    d.    DENIED as to the remaining allegations in Count I.

Pursuant to M.R. Civ. P. 79(a), the clerk is instructed to incorporate this order into the docket by reference.

Date:    October 15, 2012

A.M. Horton
Business and Consumer Court

Entered on the Docket: 10/17/12
Copies sent via Mail ___ Electronically ✓

11

BCD-CV-12-33

Central Distributors, INC.,

        Plaintiff

v.

Labatt USA Operating
Company, LLC, d/b/a Labatt USA,
d/b/a North American
Breweries

        Defendant


Attorneys:

Plaintiff:     William Robitzek, Esq
              Paul Macri, Esq
              Berman & Simmons

Defendant:  John Wall, Esq
              Cornelia Fuchs, Esq
              Monaghan Leahy, LLP