MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2026 ME 11
Docket:      Lin-25-56
Argued:      October 9, 2025
Decided:     February 10, 2026

Panel:       STANFILL, C.J., and MEAD, CONNORS, DOUGLAS, and LIPEZ, JJ.

PATRICIA M. MINERICH et al.

v.

BOOTHBAY-BOOTHBAY HARBOR COMMUNITY SCHOOL DISTRICT et al.

MEAD, J.

[¶1]   Patricia Minerich and seven other residents of Boothbay and Boothbay Harbor[1] (collectively, the Residents), appeal from a judgment of the Superior Court (Lincoln County, *Cashman, J.*) denying their Rule 80B complaint for judicial review of a decision of the Boothbay-Boothbay Harbor School Board (the Board) denying their petition for reconsideration of a bond question. They also appeal the dismissal of their independent claims against the Board and several individuals[2] for a declaratory judgment that their First Amendment rights had been violated and for attorney fees pursuant to 42 U.S.C.A. § 1983

---

[1]  The other named residents are James Farrin, Virginia Farrin, Elizabeth Grant, Roy Tholl, Stephen Carbone, Pamela Mancusco, and Daniel Zajdel.

[2]  The individuals are Ronnie Campbell, Troy Lewis, Matt Doucette, Paul Roberts, Darrell Gudroe, and Sewall Maddocks.

(Westlaw through Pub. L. No. 119-59).  Finding no error with the Board's denial of the petition and the Superior Court's dismissal of independent claims, we affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts are drawn from the Superior Court's decision and are supported by the record.  *Hurricane Island Found. v. Town of Vinalhaven*, 2023 ME 33, ¶ 2, 295 A.3d 147.  On February 6, 2024, the Boothbay-Boothbay Harbor Community School District initiated a referendum to vote on a bond of $29,950,000 to renovate the elementary and middle schools in the district. A special election was held on April 24, 2024, and voters approved the bond.

[¶3]  On May 1, 2024, the Residents, from both Boothbay and Boothbay Harbor, submitted a petition to the Board containing two articles requesting "a Reconsideration Referendum" of the April 24th election.  Article 1 asked: "Shall Article 1 as approved by the voters of the Boothbay-Boothbay Harbor Community School District on April 24, 2024, and reprinted as follows, be *reconsidered and repealed* pursuant to 20-A M.R.S. § 1504?"  Article 2 asked: "If Article 1 on this ballot is validly approved, resulting in the repeal of the April 24, 2024 vote regarding the Elementary/Middle School Project as described on the April 24, 2024 ballot, do you favor authorizing the board of Trustees of

Boothbay-Boothbay Harbor Community School District (the 'District') to update and renovate the existing Boothbay Region Elementary School as further described below (the 'Project'), and to issue bonds of notes (the 'Bonds') in the name of the District solely for the Project *in an amount not to exceed $10,250,300*."

[¶4]  On May 14, 2024, the Board rejected the petition because it requested a referendum on "(i) an article that is different from the article considered by the District Voters on April 24, 2024, and (ii) a second article that is unrelated to the April 24, 2024, referendum."  The Board did not reform the submitted articles, because doing so "would change what the voters who signed the petition put their name to."

[¶5]  The Residents filed a complaint in the Superior Court seeking review of the Board's decision pursuant to M.R. Civ. P. 80B and asserting independent claims seeking a declaratory judgment to recognize their compliance with 20-A M.R.S. § 1504 (2025) and attorney fees based on deprivation of their First Amendment rights to petition the government pursuant to section 1983.  On December 31, 2024, the Superior Court denied both the 80B complaint and the independent claims, finding that the petition was not a petition for reconsideration because of the inclusion of Article 2 and

4

that the independent claims were barred by the exclusivity principle. The Residents timely filed a notice of appeal on January 17, 2025. *See* M.R. Civ. P 80B(n); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A.    Subject Matter Jurisdiction

[¶6]  The District argues that the Superior Court lacked jurisdiction to review the Board's decision under Rule 80B because the Board's duty is discretionary and neither section 1504 nor its statutory scheme provide for judicial review. The District argues that only a writ of mandamus could provide a mechanism for judicial review and because mandamus applies only to ministerial duties, not discretionary duties, the Superior Court should have dismissed the 80B complaint for lack of subject matter jurisdiction.

[¶7] We review de novo whether the Superior Court has jurisdiction over a complaint for review of governmental action pursuant to Rule 80B, *Hurricane Island Found.*, 2023 ME 33, ¶ 10, 295 A.3d 147, because "Rule 80B itself does not confer jurisdiction to review a municipal action; it simply prescribes the procedure for judicial review when there is a separate basis for such jurisdiction." *15 Langsford Owner LLC v. Town of Kennebunkport*, 2024 ME 79, ¶ 12, 327 A.3d 1093. Jurisdiction exists over an 80B complaint if it is "provided

by statute or is otherwise available by law." M.R. Civ. P. 80B(a). Judicial review is not provided for in section 1504, nor in its statutory scheme. *See* 20-A M.R.S. §§ 1501-1506 (2025). "Because the extraordinary writs were virtually eliminated as separate procedural devices, Rule 80B is ordinarily the only procedural path to assert against the government the substantive rights protected by the extraordinary writs." *Hurricane Island Found.*, 2023 ME 33, ¶ 10, 295 A.3d 147.

### 1. Availability of the Writ of Mandamus

[¶8] Review is "otherwise available by law" if "it is in the nature of that formerly available under the common law extraordinary writs, such as certiorari, mandamus or prohibition." *Dowey v. Sanford Hous. Auth.*, 516 A.2d 957, 959 (Me. 1986). A writ of mandamus functions "to compel the performance of a ministerial act." *15 Langsford Owner LLC*, 2024 ME 79, ¶ 17, 327 A.3d 1093. We have previously spoken to whether a duty is ministerial or discretionary, and thus whether a writ of mandamus could issue:

> When the law requires the public officer to do a specified act, in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial in character and performance may be compelled by mandamus if there is no other remedy. When, however, the law requires a judicial determination to be made, such as the decision of a question of fact, or the exercise of judgment in deciding whether the act should be done or not, the

duty is regarded as judicial and mandamus will not lie to compel performance.

*Id.* (quotation marks omitted).  Because the determination of Superior Court jurisdiction turns on whether the Board's duty is ministerial or discretionary, *see* 14 M.R.S. § 5301 (2025), we must interpret the statute at issue, namely section 1504.

### 2.    Interpretation of Section 1504

[¶9]  "We review questions of statutory interpretation de novo," first looking to "the statute's plain meaning."  *Me. Sch. Admin. Dist. No. 37 v. Pineo*, 2010 ME 11, ¶ 16, 988 A.2d 987.  Section 1504(1) provides:

> The regional school unit board *shall*, within 60 days, initiate a new regional school unit referendum to reconsider the vote of the previous referendum if, within 7 days of the first referendum, at least 10% of the number of voters voting for the gubernatorial candidates in the last gubernatorial election in the municipalities within the regional school unit petition to reconsider a prior regional school unit referendum vote.

20-A M.R.S. § 1504(1) (emphasis added).  The Legislature has explicitly stated that "'[s]hall' and 'must' are terms of equal weight that indicate a mandatory duty, action or requirement.  'May' indicates authorization or permission to act."  1 M.R.S. § 71(9-A) (2025).  Further, we have "consistently held that the word shall is to be construed as must, and that such statutory language

indicates a mandatory duty." *Pineo*, 2010 ME 11, ¶ 18, 988 A.2d 987 (quotation marks omitted).

[¶10] The plain language of the statute establishes that the Board's duty is ministerial, not discretionary, so long as the minimum statutory criteria are met. *See* 1 M.R.S. § 71(9-A); *infra* ¶ 13. While the District is correct that the prior cases of *Heald v. Sch. Admin. Dist. No. 74* and *Dobbs v. Me. Sch. Admin. Dist. No. 50*[3] hold that school district boards have discretionary authority to manage the referendum process, they were decided under section 1504's predecessor statute, 20 M.R.S.A. § 225(2)(A) (1964 & Supp. 1980).[4] *Heald*, 387 A.2d 1, 3-4 (Me. 1978); *Dobbs*, 419 A.2d 1024, 1027-28 (Me. 1980).

[¶11] Our determination in *Heald* and *Dobbs* that section 225 conferred discretionary authority upon school boards was predicated upon the statutory language that preceded subsection 2(A): "[S]chool directors shall be authorized to call such meeting as follows." 20 M.R.S.A. § 225 (Supp. 1980); *Heald*, 387

---

[3] In *Dobbs,* the ultimate question was whether the Board had the authority to seek reconsideration on a prior bond question, not whether the Board had authority to refuse to submit a resident led reconsideration effort for referendum. 419 A.2d at 1028. Accordingly, its precedential value is limited.

[4] The applicable portion of section 225(2)(A) reads: "When requested by 10% of the number of voters voting for the gubernatorial candidates at the last statewide election in the municipalities comprising the district, the directors shall call a district meeting, placing before the voters the specific school construction article which has been requested by the petitioners." 20 M.R.S.A. § 225(2)(A) (Supp. 1980).

8

A.2d at 4 ("The quoted language does not require the directors to call such a meeting. It merely authorizes them to do so at their discretion."). We noted that if section 225(2)(A) "were to require the directors to order a new election at the request of 10% of the voters in the district," then the Board's duty would have been ministerial. *See Heald*, 387 A.2d at 3 n.5.

[¶12]  In this matter, by contrast, section 1504 contains no such "authorizing" language. Instead, it provides an unambiguous mandate that the Board must put the articles up for reconsideration if the statutory requirements are met. The Legislature could have included the language of authorization but did not. *See* 21-A M.R.S. § 901(3-A) (2025) (conferring on the Secretary of State the power to review direct initiative legislation before putting it out to the voters). Moreover, we declared when interpreting another Title 20-A statute that, because the statute "requires the selectmen to meet, countersign, and post the warrants, and does not afford them any discretion or offer an alternative procedure, the selectmen of each town had a mandatory duty to comply with the statute." *Pineo*, 2010 ME 11, ¶ 18, 988 A.2d 987.

[¶13] Section 1504 has three requirements that must be met in order to trigger the obligation to initiate a new referendum: (i) the number of signatories to the petition must be at least ten percent of the number of voters

voting for the gubernatorial candidates in the last gubernatorial election in the municipalities within the school regional unit, (ii) the petition must be received by the regional school unit within seven days after the first referendum vote, and (iii) the petition must specifically be to reconsider a prior regional school unit referendum vote. *See* 20-A M.R.S. § 1504(1).[5]  The Board is vested with a limited degree of gatekeeping discretion to determine that the threshold requirements have been met, but once they are met, the Board's duty to put the reconsideration question up for a referendum is ministerial.

[¶14]  The District also relies on this Court's decision in *Dunston v. Town of York* for the notion that a school board's authority over reconsideration articles is discretionary.  590 A.2d 526 (Me. 1991).  However, our rationale in *Dunston* in finding that the statute containing the procedure for calling a town meeting did not create a mandatory duty for municipal officers was predicated upon the specific language of the statute at issue that provided an alternative method for convening a meeting if the municipal officers unreasonably refused to call the meeting.  *Id.* at 527.  We concluded that the combination of the standard and alternative methods "recogniz[ed] the authority of the selectmen to exercise their sound discretion" in determining whether a petition met the

---

[5]  Sections 1504(2) and (3) provide additional requirements related to quorum and bonds that are not at issue here.

statutory requirements. *Id.* Here, section 1504 does not provide an alternative pathway should the Board decide not to put the reconsideration question up for a referendum. As a result, "[n]o such discretion exists in this case because there is no method for calling a referendum other than the one outlined in [20-A M.R.S. § 1504]." *Pineo*, 2010 ME 11, ¶ 19, 988 A.2d 987.

[¶15] In sum, we conclude that the Board's duty to initiate a referendum upon receipt of a reconsideration petition is ministerial, provided that the petition meets the statutory requirements of section 1504. As a result, the Superior Court had jurisdiction to hear the request for judicial review of the Board's decision, *see* 14 M.R.S. § 5301, because a writ of mandamus could function to compel the Board to put the article up for a referendum if the petition was a proper reconsideration petition.[6] Therefore, we reach the merits of the case.

---

[6] In the alternative, the District argues that if the Board's duty is ministerial, the case is moot because the statutory deadline of sixty days for reconsideration motions has passed and thus a writ of mandamus is no longer viable. This matter is not moot because the bonds in dispute have not been issued, so we can still provide meaningful relief. *See Brunswick Citizens for Collaborative Gov't v. Town of Brunswick*, 2018 ME 95, ¶ 8, 189 A.3d 248 (finding moot a declaratory judgment action seeking to allow an initiative to overrule the sale of property by a town council because the property had already been sold, making it so that any ruling would be without effect).

Even if a case is moot, we may still address it if it falls into one of the three recognized exceptions to the mootness doctrine: (i) the collateral consequences exception, (ii) the public interest exception, and (iii) the exception for issues that are repetitive, yet evade review. *Me. Civ. Liberties Union v. City of S. Portland*, 1999 ME 121, ¶ 9, 734 A.2d 191. We conclude that both the second and third exceptions apply here. *See Pineo*, 2010 ME 11, ¶¶ 9-10, 988 A.2d 987.

## B.    Petition for Reconsideration

[¶16]  The Residents contend that (1) the Board erred in finding that the petition was not a reconsideration petition because section 1504 does not place any limitations on the form or contents of a reconsideration petition, and (2) Article 2 constituted a distinct budget question with a separate procedure under 20-A M.R.S. § 1482-A(3) (2025).  The District maintains that the petition was not a reconsideration petition because a normal reading of the phrase "petition to reconsider," which is undefined in statute, would preclude the Board from taking up a petition to reconsider *and* repeal the prior referendum vote plus another article that is conditioned upon whether Article 1 passes.

### 1.    Scope of the Petition Language

[¶17]  "When the Superior Court acts in an appellate capacity," we directly review the operative administrative decision "to determine whether the findings are unsupported by substantial evidence in the record, and whether there was any abuse of discretion or error of law."  *Penkul v. Town of Lebanon*, 2016 ME 16, ¶ 14, 136 A.3d 88 (quotation marks omitted).

[¶18]  As the District accurately noted, the term "reconsideration" is undefined in section 1504.  As a result, we must interpret the term to determine whether the petition was in fact a petition for reconsideration.  We review

questions of statutory interpretation de novo, focusing on the plain language, *see supra* ¶ 9, while "considering the entire statutory scheme to achieve a harmonious result," *Cassidy Holdings, LLC v. Aroostook Cnty. Comm'rs*, 2023 ME 69, ¶ 6, 304 A.3d 259 (quotation marks omitted). When construing an undefined statutory term, courts "often rely on the definitions provided in dictionaries." *Apex Custom Lease Corp. v. State Tax Assessor*, 677 A.2d 530, 533 (Me. 1996). Reconsideration means "[t]o discuss or take up (a matter) again." *Reconsider*, Black's Law Dictionary (12th ed. 2024).

[¶19] Here, the Residents' petition does not request a reconsideration as provided by the limited and specific context of the statute. Because of the inclusion of the language "and repeal" emphasized by the Residents in their petition, Article 1 was not merely seeking a referendum to reconsider the April 24th vote. Rather, the Residents made a request to affirmatively repeal the result of that vote. Plainly, this is not what "reconsideration" means. *See supra* ¶ 18. As the Superior Court correctly stated, "a proper [section] 1504 reconsideration request does not propose a different or replacement ballot initiative. It can only ask if a previous referendum should be revisited at the ballot." The Superior Court's concise language accurately reflects how a reconsideration referendum is meant to work: voters are invited to revisit a

ballot question and have the option of either re-approving it or denying it. By adding in the additional language of "and repeal," the Residents have changed how reconsideration works in the context of a referendum vote. Because section 1504 provides for a referendum to only reconsider the prior referendum vote, the Residents' petition exceeds the scope of the statute's provisions by seeking something beyond a true reconsideration initiative.

[¶20]    Moreover, Article 2 is unquestionably not a question on reconsideration. Because it asks the voters to approve an entirely distinct replacement initiative, not to merely take up a previous matter again, the article does not and cannot fall into the statutory definition of "reconsideration" as provided by section 1504.

[¶21]    While the Residents contend that Article 2 was meant to be a separate article submitted under section 1482-A, the article contains no reference to that statute, nor does it give any indication that the signatories to the petition should consider it to be a separate referendum initiative. The Residents cannot "backdoor" an entirely separate and independent budgetary initiative by submitting it as part and parcel of a reconsideration petition. The Residents' petition makes no suggestion that they were not proceeding, in Article 2, pursuant to section 1504, but rather were attempting a separate,

14

de facto referendum initiative pursuant to section 1482-A. In any event, section 1482-A affords the Residents no independent process to trigger a reconsideration vote.

### 2. Severability of the Articles

[¶22]  The Residents argue the introduction of Article 2 is not fatal to their case and that the Board could have severed Article 2 from Article 1; this argument is unavailing.  Even if we determined that either article constituted a reconsideration petition, we have previously warned against joining multiple issues in referenda because of the confusion it can cause.  *See Common Cause v. State*, 455 A.2d 1, 13 (Me. 1983).  The Board had no way of knowing which article motivated the signatories to the petition, and it is certainly possible that the inclusion of Article 2 helped induce the signers' support of Article 1.

[¶23]  Prospective signers were presented with a unitary two-article petition that carries no suggestion of a later severance of the articles.  A person signing the petition might reasonably believe they were "pre-approving" authority for the District to "issue bonds or notes . . . in the name of the District solely for the Project in an amount not to exceed $10,250,300" (emphasis omitted).  Neither the Board nor the court can speculate upon the signatories'

motive or intent in signing the two-article petition or whether they would have signed the petition had it contained only a single article.

[¶24]  The Board properly concluded that the Articles could not be severed from each other, and the reconsideration petition, as drafted and signed, could not be submitted to referendum.

## C.    Independent Claims

[¶25]  Because we determine that the Superior Court had jurisdiction to hear the Residents' Rule 80B complaint, and because the Residents' claims were fully adjudicated in that context, the exclusivity principal bars the independent claims;[7] we affirm the Superior Court's denial of the independent claims.  *See Cayer v. Town of Madawaska*, 2016 ME 143, ¶¶ 16-17, 148 A.3d 707; *Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 21 n.7, 252 A.3d 504; *Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶¶ 7-9, 209 A.3d 102.

---

[7] We also note an additional ground for the denial of the Residents' First Amendment claim.  *See Deutsche Bank Nat'l Tr. Co. v. Wilk*, 2013 ME 79, ¶ 19, 76 A.3d 363 (stating that this Court "may affirm a trial court's judgment on a ground not relied upon by the trial court." (quotation marks omitted)). Because we hold that there has been no violation of the reconsideration process provided by section 1504, the Residents' First Amendment claim fails on the merits as they have not demonstrated any abridgements of their right to petition.

### III. CONCLUSION

[¶26]  Because Article 1 did not constitute a proper reconsideration petition given that it requested affirmative action beyond the scope of the statutory provisions, and because Article 2 simply did not constitute a reconsideration petition of a previous vote, the Board did not abuse its discretion or commit an error of law in declining to submit the articles in the petition to the voters in a referendum pursuant to section 1504.  The Superior Court's affirmance of the Board's decision is therefore affirmed.

The entry is:

Judgment affirmed.

---

Kristin M. Collins, Esq. (orally), Preti Flaherty Beliveau & Pachios, LLP, Augusta, for appellants Patricia M. Minerich, James Farrin, Virginia Farrin, Elizabeth Grant, Roy Tholl, Stephen Carbone, Pamela Mancusco, and Daniel Zajdel

David Kallin, Esq. (orally), and Amy K. Olfene, Esq., Drummond Woodsum, Portland, for appellee Boothbay-Boothbay Harbor Community School District, Ronnie Campbell, Troy Lewis, Matt Doucette, Paul Roberts, Darrell Gudroe, and Sewall Maddocks

Lincoln County Superior Court docket number AP-2024-5
FOR CLERK REFERENCE ONLY